Matthew J. Matern (SBN 159798)
  mmatern@maternlawgroup.com
Scott A. Brooks (SBN 160115)
  sbrooks@maternlawgroup.com
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266

Attorneys for plaintiff Arthur Thompson,
an individual, and on behalf of others
similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR THOMPSON, an individual, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NSC TECHNOLOGIES, LLC, a Virginia limited liability corporation; BAE SYSTEMS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 20-CV-371-JLS(MSB)<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  December 2, 2021<br>Time: 1:30 p.m.<br>Courtroom: 4D |

1

**TO THE HONORABLE COURT:**

PLEASE TAKE NOTICE that on December 2, 2021 at 1:30 p.m. in Courtroom 4D of the United States District Court for the Southern District of California located at 221 W. Broadway, San Diego, California, 92101, plaintiff Arthur Thompson ("Plaintiff"), individually and on behalf of all others similarly situated will, and hereby does, move the Court as follows:

1. To preliminarily approve the Stipulation of Class Action Settlement and Release ("Agreement," Exh. 1 to Declaration of Matthew J. Matern) between plaintiff and defendants NSC Technologies, LLC ("NSC") and BAE Systems San Diego Ship Repair Inc. ("BAE SDSR"), erroneously sued as "BAE Systems, Inc."

2. To certify for settlement purposes only, the Settlement and Collective Classes, both defined as, "all individuals employed by NSC and placed to work at the BAE Systems San Diego Ship Repair Inc. facility at 2205 E. Belt Street in San Diego, California, as hourly non-exempt employees between January 10, 2016 and August 8, 2021";

3. To set dates for the submission of opt-outs and objections;

4. To set the date for the fairness hearing regarding final approval of the Agreement, Class Representative Enhancement Payments, Settlement Administrator's fees; and Class Counsel's motion for an award of attorneys' fees and costs; and

5. To approve the form and authorize the mailing of the proposed notice of settlement.

This motion is made on the grounds that the Settlement Agreement, which provides for a non-reversionary payment of $2,750,000.00, "is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079

(N.D. Cal. 2007) quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp.2d 561, 570 n.12 (E.D. Pa. 2001). The proposed notice (Exh. B to the Agreement) of settlement complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the Settlement, including Plaintiff's motion for attorneys' fees and costs, before deciding whether to opt-out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

The motion is based upon this Notice, the attached Memorandum of Points and Authorities and accompanying Declarations of Matthew J. Matern and Arthur Thompson and exhibits, the complete file and records in this action, and such other evidence or oral argument that may be presented at the time of the hearing.

Dated: October 21, 2021            MATERN LAW GROUP, PC


By:     /s/ Scott A. Brooks
        Matthew J. Matern
        Scott A. Brooks
        Attorneys for plaintiff Arthur Thompson,
        an individual, and on behalf of others
        similarly situated

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ..................................................................12

II.     THE PARTIES ....................................................................13

III.    INVESTIGATION AND DISCOVERY .......................................14

IV.     SETTLEMENT.....................................................................15

IV.     KEY SETTLEMENT TERMS.................................................15

        A.      Definition of Settlement Classes..................................15

        B.      Allocation of the Settlement.......................................16

                1.    Administration Costs. ........................................16

                2.    Class Counsel's Attorneys' Fees and Costs............16

                3.    Plaintiff's Enhancement Payment. ........................16

                4.    LWDA Payment. ...............................................17

                5.    Defendants' Payroll Taxes. .................................17

                6.    Allocation of Net Settlement Amount. ....................17

                7.    Unapproved Funds..............................................17

                8.    Uncashed Checks...............................................18

        C.      Notice of the Proposed Settlement. ...............................18

        D.      Objections and Exclusion Requests...............................18

        E.      Releases.................................................................18

        F.      Posting of Settlement Agreement on Settlement Administrator's Website...........................................................................19

V.      THE PROPOSED SETTLEMENT CLASS AND FLSA COLLECIVE SHOULD BE PROVISIONALLY CERTIFIED..................................19

        A.      The Requirements of Rule 23(a) are Satisfied..................19

                1.    Rule 23(a)(1): Numerosity. .................................20

                2.    Rule 23(a)(2): Commonality. ...............................20

                3.    Rule 23(a)(3): Typicality. ..................................21

CASE NO. 20-CV-371-JLS(MSB)
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

4. Rule 23(a)(4): Adequacy of Representation. .........................21

B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied ................................................................22

VI. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.................23

A. General Principles.............................................................23

B. The Settlement is the Product of Arms-Length, Non-Collusive Negotiations, has no Obvious Deficiencies, and Complies with the 2018 Amendments to Preliminary Approval Requirements and Standards..............................................................24

1. The Settlement is non-collusive. ...........................24

2. The Settlement contains no "obvious deficiencies."...............25

a. The Settlement provides substantial monetary relief to the Class. ................................................................25

b. The distribution plan treats all Class Members equally and is fair and reasonable.................................................25

c. The release is coextensive with the operative complaint. ...25

d. The proposed Class Representative Enhancement payment is fair and reasonable. ........................................25

e. The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved.................26

C. The Settlement Is Well Within the Range of Possible Approval. ......28

1. The Strength of Plaintiff's Case on the Merits Balanced Against the Risk, Expense, and Likely Duration of Further Litigation Weigh in Favor of the Settlement. .........................28

2. The Overall Recovery Is Substantial. ....................................30

3. The Stage of the Proceedings. ...............................................30

4. Highly Experienced Class Counsel Supports the Settlement. .........................................................................30

D. Judicial Approval of Collective Action Settlements.........................30

VII. THE PAGA PENALTIES SECURED BY THE SETTLEMENT AREGENUINE AND MEANINGFUL AND FULFILL PAGA'S UNDERLYING PURPOSE TO BENEFIT THE PUBLIC........................32

VIII.  THE PROPOSED NOTICE SHOULD BE APPROVED ..........................34

IX.    SCHEDULE FOR FINAL APPROVAL ....................................................35

X.     CONCLUSION ......................................................................................36

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adoma v. University of Phoenix*,
  913 F.Supp.2d 964 (E.D.Cal 2012) ................................................................................27

*Ambriz v. Coca-Cola Co.*,
  No. CV 14-00715 SVW, 2015 WL 12683823
  (C.D. Cal. March 11, 2015)................................................................23, 28, 30

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................21

*Armstrong v. Davis*,
  275 F.3d 849 ................................................................................19

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. July 2, 2013) ....................................................26, 27

*Boeing v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................26

*Burden v. SelectQuote Ins. Servs.*, No. C,
  10-5966 LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)................................29

*Ching v. Siemens Indus., Inc.*,
  No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .............27

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)................................................................34

*Craft v. Cnty. of San Bernardino*,
  624 F.Supp.2d 1113 (C.D. Cal. 2008) ................................................................27

*Deaver v. Compass Bank*,
  No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)................27

*Does I thru XXIII v. Advanced Textile Corp.*,

7

214 F.3d 1058 (9th Cir.2000)........................................................................30

*Dunn v. Teachers Ins. & Annuity Assoc'n of Am.*,
2016 WL 153266 (N.D. Cal. Jan. 13, 2016).......................................................30

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................34

*Espinosa v. California College of San Diego, Inc.*,
No. 17 CV 744-MMA (BLM), 2018 WL 1705955 (S.D. Cal. April 9, 2018)......26

*Franco v. Ruiz Food Products, Inc.*,
No. 1:10-cv-02354- SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ...........27

*Garcia v. Gordon Trucking, Inc.*,
No. 1:10-cv-0324-AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012).......27

*Gardner v. GC Servs., LP*,
No. 10-0997, 2011 WL 5244378 (S.D. Cal. Nov. 1, 2011)...................................28

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...................................................................20,22

*In re Hill,*
775 F.2d 1037 (9th Cir. 1985)........................................................................26

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D. Cal. 2007).............................................................2, 23

*In re Vitamins Antitrust Litig.*,
2001 WL 856292 (D.D.C. July 25, 2001)..........................................................23

*Jones v Agilysys, Inc.,*
No. C12--03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 9, 2014).....................30

*Kamar v. Radio Shack Corp.*,
254 F.R.D. 387 (C.D. Cal. 2008)...................................................................22

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982)......................................................................30

CASE NO. 20-CV-371-JLS(MSB)
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

*Mashburn v. National Healthcare, Inc.*,
  684 F. Supp. 679 (1988)..............................................................................................26

*McKenzie v. Federal Exp. Corp.*,
  765 F. Supp. 2d 1222. (C.D. Cal. 2011) ....................................................................32

*Misra v. Decision One Mortg. Co.*,
  No. 07-0994 DOC, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009).......................35

*Morales v. Stevco, Inc.*,
  2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ..........................................................30

*Moshogiannis v. Security Consultants Grp., Inc.*,
  No. 10-05971, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012)..................................28

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).................................................................................29

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016).....................................................................32

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010).....................................................................................21

*Salazar v. Sysco Central Cal., Inc.*,
  2017 WL 1135801 (E.D. Cal. Feb. 2, 2017)..............................................................32

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
  157 F. Supp.2d 561 (E.D. Pa. 2001)............................................................................ 3

*Selk v. Pioneers Mem'l Healthcare Dist.*,
  159 F. Supp. 3d 1164 (S.D. Cal. 2016).......................................................................31

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010).................................................................................27

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)......................................................................................27

*Williams v. MGM-Pathe Communications Co.*,

CASE NO. 20-CV-371-JLS(MSB)
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

129 F.3d 1026 (9th Cir. 1997)...................................................................................26

*Willner v. Manpower Inc.*,
    No. 11-CV-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015)................27

*Wright v. Linkus Enter., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009).........................................................................35

**State Cases**

*Iskanian v. CLS Transportation,*
    59 Cal.4th ...........................................................................................................26

*Lafitte v. Robert Half Int'l Inc.,*
    1 Cal. 5th 480 (2016) ..........................................................................................26

*ZB, N.A. v. Superior Court,*
    8 Cal.5th 175 (2019) ...........................................................................................33

**Federal Statutes**

29 U.S.C. section 201 ...............................................................................................12

29 U.S.C. section 216(b)....................................................................................20, 30

**State Statutes**

California Civil Code section 2699(i) .......................................................................32

California Civil Code section 2699(l)(2)...................................................................32

California Civil Code section 1542 ..........................................................................19

**Federal Rules**

Federal Rule Civil Procedure 23 ..............................................................................19

Federal Rule Civil Procedure 23(a)..........................................................................19

Federal Rule Civil Procedure 23(a)(1) .....................................................................20

Federal Rule Civil Procedure 23(a)(2) .....................................................................20

10

Federal Rule Civil Procedure 23(a)(3) ..............................................................21

Federal Rule Civil Procedure 23(a)(4) ...........................................................21, 22

Federal Rule Civil Procedure 23(b)(1), (2) or (3) .................................................20

Federal Rule Civil Procedure Rule 23(b)(3).....................................................22, 34

Federal Rule Civil Procedure 23(c)(2)(B) .......................................................34, 35

Federal Rule Civil Procedure 23(c)(3) ..............................................................34

Federal Rule Civil Procedure 23(e)..................................................................24

Federal Rule Civil Procedure 23(e)(1) ..............................................................24

Federal Rule Civil Procedure 23(e)(2) ..............................................................35

Federal Rule Civil Procedure 23(e)(3) ..............................................................24

## Other Authorities

4 *Newberg on Class Actions*, § 13.13 (5th ed., 2014)..............................................23

*Manual for Complex Litigation, Third* § 30.41.....................................................23

CASE NO. 20-CV-371-JLS(MSB)
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Arthur Thompson ("plaintiff"), individually and on behalf of the approximately 1,600 similarly situated putative non-exempt California employees of defendant NSC Technologies, LLC ("NSC") and assigned to work at defendant BAE Systems San Diego Ship Repair Inc.'s ("BAE") (collectively, "defendants") shipyard, seeks preliminary approval of a global $2,750,000.00 non-reversionary settlement.

Plaintiff contends that (1) defendants failed to provide meal periods and rest breaks; (2) defendants failed to pay premium wages for missed, short and interrupted meal periods and rest breaks; (3) all compensation was not included in the regular rate for purposes of overtime compensation; (4) the employees worked off-the-clock resulting in unpaid wages, including minimum wages and overtime; (5) defendants failed to reimburse the employees for expenses incurred in the discharge of their duties; and (6) these alleged violations support liability for the other and derivative claims, including claims for breach of the covenant of good faith and fair dealing and penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), and violation of the Fair Labor Standards Act, 29 U.S.C. section 201 et seq.

This Settlement was reached after two early neutral evaluation sessions with Magistrate Judge Berg followed by a full-day private mediation and then nearly four months of negotiations which culminated in the Parties' acceptance of the mediator's second proposal. The Settlement results from the Parties' well-informed understanding of the strengths and weakness of both the claims and the defenses and provides compensation to Class Members while avoiding the cost, risk, and delay of further litigation, and the uncertainties of certification and trial.

If approved, the Settlement will result in an anticipated recovery of $1,690,978.30 for the Class with an average payment of $1,056.86. The Settlement

allocates $100,000.00 to PAGA penalties, 75% of which will be paid to California's Labor and Workforce Development Agency ("LWDA").

The Settlement "falls within the range of possible approval," the standard governing preliminary approval. *Manual for Complex Litigation, Third* § 30.41 (Federal Judicial Center 1995). It thus warrants notice to the putative Class of the Settlement terms and a final approval hearing to consider whether the Settlement is fair, reasonable and adequate.

Plaintiff requests that the Court certify the proposed Settlement Class and grant preliminary approval of the Settlement as well as approval of the PAGA portion of the Settlement.

## II.    THE PARTIES

Plaintiff is a former hourly, non-exempt employee of NSC who worked as a welder at the  BAE Systems San Diego Ship Repair Inc. shipyard located at 2205 E. Belt Street in San Diego, California from April 2018 through January 2019. He had also worked at the shipyard from December 2016 through July, 2017. Thompson Decl. ¶4.

NSC is a staffing and recruiting company for industries including shipbuilding and repair. Matern Decl. ¶4.  BAE provides ship repair services including for the US Navy, at a shipyard it leases from the Port of San Diego, located north of Naval Base San Diego. *Id.*; Thompson Decl. ¶4.

## III.    PROCEDURAL BACKGROUND

Plaintiff retained Matern Law Group ("MLG" or "Class Counsel") to represent him in his claims against defendants.  Matern Decl. ¶6. On January 10, 2020, plaintiff filed a putative class action against defendants in the San Diego County Superior Court alleging violations of California's labor laws regarding meal and rest breaks; minimum and overtime wages; payment of all wages due; required records; wage statements; indemnity of employees for necessary business expenses; and for violation of the unfair competition law. Exh. A to Dkt. 1-2; Matern Decl. ¶8.

On January 14, 2020, plaintiff filed a first amended complaint adding a cause of action for civil penalties under the PAGA ("the Action"). Exh. B to Dkt. 1-2; Matern Decl. ¶9.

On February 27, 2020, defendants jointly removed the Action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1441 and 1453. Dkt. 1; Matern Decl. ¶10.

Concurrently herewith, Plaintiff seeks leave to file a Second Amended Complaint to add a cause of action for violation of the FLSA.

## III.    INVESTIGATION AND DISCOVERY

Upon being retained, MLG interviewed plaintiff at length, obtained important information and documents from plaintiff regarding defendants' wage and hour policies and practices, and conducted research regarding plaintiff's claims and defendants' anticipated defenses. Matern Decl. ¶11.

Prior to two early settlement conferences (discussed *infra*), defendants informally produced a sampling of time and payroll data as well as policy documents. Matern Decl. ¶12. When the Action did not resolve, formal discovery commenced. *Id.* Plaintiff propounded over 80 document requests and 20 interrogatories on both defendants, to which defendants responded and produced hundreds of pages of documents. *Id.* Plaintiff also served a request to inspect and enter onto defendants' property, and three witness deposition notices, including two persons most knowledgeable containing 30 subject categories. *Id.* Plaintiff responded to defendants' 25 document requests, produced responsive documents and sat for a full day of deposition. *Id.*

Plaintiff also retained an expert statistician who reviewed and analyzed defendants' time and payroll records and prepared an analysis of this information, which was instrumental in creating a damages model for the mediation. Matern Decl. ¶13. The documents and data which defendants produced permitted the Parties to evaluate their respective positions. Matern Decl. ¶14.

14

## IV.    SETTLEMENT

On April 15, 2020, the Parties participated in an early neutral evaluation and on August 26, 2020 a follow-up Settlement Conference, both with Magistrate Judge Michael S. Berg. Dkts. 9, 13, 20; Matern Decl. ¶15. Both conferences were unsuccessful. *Id*. Months later, after formal discovery had been conducted, the Parties agreed to mediate. Matern Decl. ¶16. On February 23, 2021, the Parties participated in full day mediation with mediator Deborah Saxe. *Id*. The Action did not resolve at the mediation, however, Ms. Saxe continued facilitating negotiations between the Parties and nearly four months later, on June 9, 2021, a settlement was finally reached, subject to a long-form agreement. *Id*. The Stipulation of Class Action Settlement and Release ("Agreement") was executed by all Parties on September 2, 2021. *Id.* and Exh. 1.

The mediation was conducted at arm's length and was adversarial. Matern Decl. ¶17. The Parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate its position through trial and appeal if a settlement had not been reached. *Id*.

The Settlement is the result of an informed and detailed analysis of Defendants' potential liability of total exposure in relation to the costs and risks associated with continued litigation. Matern Decl. ¶18. Based on MLG's pre-litigation investigation, discovery, and expert analysis, MLG was able to act intelligently and effectively in negotiating the proposed Settlement. *Id*.

## IV.    KEY SETTLEMENT TERMS

### A.    Definition of Settlement Classes.

The Agreement proposes certification of a Settlement Class of, "all individuals employed by NSC and placed to work at the BAE Systems San Diego Ship Repair Inc. facility at 2205 E. Belt Street in San Diego, California ("BAE SDSR"), as hourly non-exempt employees between January 10, 2016 and August 8,

15

2021" (the Class Period").[1] Agreement ¶¶27, 65, 79. The Class is comprised of approximately 1,600 persons. Matern Decl. ¶6. Plaintiff also seeks certification of a FLSA Collective class with the same definition.

### B.    Allocation of the Settlement.

The settlement provides for a non-reversionary Class Settlement Amount of $2,750,000.00 ("Class Settlement Amount") inclusive of all Individual Settlement Payments to Participating Class Members, the Class Representative Enhancement Payment to plaintiff, the Class Counsel Award, the LWDA Payment, defendants' share of taxes, and the Settlement Administration Costs. Agreement ¶8.

### 1.    Administration Costs.

Phoenix Settlement Administrators was selected as the Settlement Administrator. Agreement ¶26. The administrative costs are estimated to be no more than $15,000 which will be paid from the Class Settlement Amount. Matern Decl. ¶19.

### 2.    Class Counsel's Attorneys' Fees and Costs.

Class Counsel will request one-third of the Class Settlement Amount, i.e., $916,666.67 for their attorneys' fees based on the common fund method plus actual costs. Agreement ¶2, 32.

### 3.    Plaintiff's Enhancement Payment.

The Agreement proposes an Enhancement Payment of $15,000.00 to plaintiff in recognition of his time, effort and the risks he undertook in bringing the Action and in giving defendants a broader release than other Class Members. Agreement ¶¶7, 33; Matern Decl. ¶¶36-39.

---

[1] The settlement does not include employees that worked directly for BAE Systems San Diego Ship Repair Inc. or on assignment by another staffing agency, and so "workweeks worked by individuals and Settlement Class Members when employed directly for BAE SDSR and/or when assigned to work at BAE SDSR by an entity other than NSC during the Class Period are not included in the Released Claims." Agreement, ¶21.

16

### 4.    LWDA Payment.

The Agreement allocates $100,000.00 for PAGA penalties, 75% of which ($75,000.00) shall be paid to the LWDA and 25% ($25,000.00) shall become part of the Net Settlement Amount. Agreement ¶36.

### 5.    Defendants' Payroll Taxes.

Based on defendants' counsel's representation, defendants' share of payroll taxes is estimated to be approximately $48,869.27. Matern Decl. ¶20.

### 6.    Allocation of Net Settlement Amount.

After deducting the Class Representative Enhancement Payment, the Class Counsel Award, the LWDA Payment, and the Settlement Administration Costs, the balance of the Class Settlement Amount (the "Net Settlement Amount "), estimated at $1,690,978.30, will be distributed to Participating Settlement Class Members as Individual Settlement Payments. Agreement ¶14; Matern Decl. ¶20.

The Net Settlement Amount will be apportioned to each Settlement Class Member based on their proportionate number of Workweeks, by multiplying the Net Settlement Amount by a fraction, the numerator of which is the Settlement Class Member's individual total Work Weeks, and the denominator of which is the total number of Work Weeks of all Settlement Class Members. Agreement, ¶36(a).

All Individual Settlement Payments will be allocated as follows: (i) twenty percent (20%) to settlement of wage claims and (ii) eighty percent (80%) to settlement of claims for interest and statutory penalties. Agreement, ¶58.

### 7.    Unapproved Funds.

Any timely submitted opt outs or reduction in the Class Representative Enhancement Payments, Class Counsel Award or Settlement Administration Costs, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Settlement Class Member so that the amount actually distributed to Participating Settlement Class Members equals 100% of the Net Settlement Amount. Agreement ¶31. There will be no reversion of the

17

Net Settlement Amount to defendants. Agreement, ¶¶14, 31.

### 8. Uncashed Checks.

Those funds represented by settlement checks which remain un-cashed after one hundred and twenty (120) days after mailing will be transferred to the Controller of the State of California, Unclaimed Property Fund in the name of the Settlement Class Member. Agreement ¶56.

### C. Notice of the Proposed Settlement.

Within ten (10) days following preliminary approval, defendants will provide the Settlement Administrator with the Class List containing the full name, last known mailing address and telephone number; social security number; employment status and the respective number of workweeks each Class Member worked during the Class Period, according to defendants' records. Agreement ¶5.

Within ten days of receiving the List, the Settlement Administrator will update the addresses through the National Change of Address Database and mail the Notice Packet via first-class regular U.S. mail. Agreement ¶¶40-42. Any packets returned as undeliverable on or before the Response Deadline (30 days after initial mailing of notice) will be sent to the forwarding address provided and if none, the Settlement Administrator will perform a skip-trace or other search and re-mail the packet. Agreement ¶¶24, 41.

### D. Objections and Exclusion Requests.

A Class Member wishing to object to the Settlement must file a Notice of Objection with the Court within thirty (30) days after the Notice Packet is initially mailed to all Settlement Class Members. Agreement ¶¶24, 52. A Request for Exclusion must be in writing and sent to the Settlement Administrator within the same time period. Agreement ¶¶24, 46.

### E. Releases.

Upon the Effective Date (defined in the Agreement), the Settlement Class Members, other than those who submit timely requests for exclusion, will

18

release and discharge defendants and the other Released Parties from all Released Claims, as defined in the Settlement Agreement. Agreement ¶¶21, 22, 50. Settlement Class Members, will also consent to opt in to and release any and all overtime and minimum wage claims under the Fair Labor Standards Act ("FLSA") by signing and cashing the settlement check which shall include the language: "I understand that by signing and cashing this settlement check, I consent to opt-in to the Fair Labor Standards Act ("FLSA") collective action in the matter in Case No. 3:20-cv-00371-JLS-MSB in the Southern District of California, entitled *Arthur Thompson v NSC Technologies, LLC et al.*, and will release and waive all overtime and minimum wage claims under the FLSA as set forth in the Stipulation of Class Action Settlement and Release." Agreement ¶50.

   In addition to the above release, Plaintiff will provide a general release to defendants for and waive all rights and benefits under California Civil Code section 1542. Agreement ¶¶51, 68.

   **F.     Posting of Settlement Agreement on Settlement Administrator's Website.**

   Within ten (10) days of entry of the Preliminary Approval Order, the Settlement Administrator will post the Agreement and any other Court-approved forms to its website. Agreement, ¶43.


**V.     THE PROPOSED SETTLEMENT CLASS AND FLSA COLLECIVE SHOULD BE PROVISIONALLY CERTIFIED.**

   **A.     The Requirements of Rule 23(a) are Satisfied.**

   Fed. R. Civ. P. 23 gives the Court "broad discretion to determine whether a class should be certified…" *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001). When considering a request for certification of a settlement class, the Court must first determine "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all

19

class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Id.* at 1022.

Plaintiff seeks provisional certification of a Settlement Class and the FLSA Collective (together, "Settlement Class"). Agreement ¶¶65, 79; 29 U.S.C. § 216(b). The Settlement Class meets all the applicable standards for provisional certification for settlement purposes.

### 1. Rule 23(a)(1): Numerosity.

The Settlement Class consists of approximately 1,600 individuals. Matern Decl. ¶5. This number plainly satisfies the numerosity standard, which requires merely that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### 2. Rule 23(a)(2): Commonality.

The Action involves numerous questions of law and fact that are common to the Class, satisfying the requirements of Rule 23(a)(2). The claims being settled turn on, *inter alia*, the alleged unlawful and uniform policies and practices of paying employees based on their scheduled time not the time they actually clocked in; not providing lawful rest or meal breaks; not paying employees premium payments for such breaks; not maintaining records of the times employees took their meal periods and instead automatically adding meal periods to their time records; requiring employees to purchase their own tools for which they were not reimbursed; rounding; paying employees a per diem payment which was not included in the regular rate of pay used to determine their overtime rate. Thompson Decl. ¶¶4-15; Ex. 1.

Class Members' claims can be proven using common class-wide methods of proof, including the above-referenced uniform company-wide policies and practices and Class Members' timekeeping and payroll records. Matern Decl. ¶23; Thompson

20

Decl. ¶¶4-15.

### 3.     Rule 23(a)(3): Typicality.

Plaintiff's claims are typical of the class. The typicality standard is satisfied when "the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  Plaintiff and the other class members are non-exempt employees of NSC who worked at the BAE Systems San Diego Ship Repair Inc. facility in San Diego, California during the Class Period.  Agreement, ¶27; Thompson Decl. ¶4.

Plaintiff was subject to the same uniform policies and procedures as his fellow class members.  Thompson Decl. ¶¶4-15.  As a result of these policies, plaintiff was denied legally-compliant meal and rest breaks, was not paid premium payments for such breaks, was not paid for working off the clock; was not reimbursed for his business-related expenses and was not paid overtime at the regular rate of pay required by law.  *Id*.

### 4.     Rule 23(a)(4): Adequacy of Representation.

The adequacy of representation requirement is met where the Class Representative: (1) has common, not antagonistic, interests with unnamed Class Members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Here, plaintiff has diligently represented his former co-workers consistent with his fiduciary obligation by, *inter alia,* working closely with MLG in providing valuable information and documents regarding his claims, assisting with discovery, responding to MLG's inquiries and asking MLG questions, keeping informed of developments in the Action, making himself available during the litigation, especially during the several settlement conferences/mediation and making sure he understood everything that was going on in the Action so he could make the best informed decisions on behalf of the class.  Thompson Decl. ¶¶17-18.

MLG satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. Matern Decl. ¶¶27-33. MLG is well-qualified to represent the Class, as the firm has extensive experience in wage and hour litigation and has served as class counsel in numerous such cases. *Id*.

**B.    The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied.**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and focuses on the "relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022 (quotation marks and citation omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*. (quotation marks and citation omitted). "[T]he existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

Here, each of plaintiff's theories of liability presents common legal or factual questions that predominate over any individual issues. Plaintiff's meal and rest break, premium pay, off-the-clock, overtime and reimbursement theories present predominant common questions of law and fact. Thomson Decl. ¶¶4-15. Common evidence will establish that throughout the class period defendants had a class-wide policy or practice of (1) not providing lawful meal and rest breaks; (2) not paying premium payments for such breaks; (3) not paying for all time worked; (4) excluding per diem payments in the regular rate of pay for overtime wages; and (5) not reimbursing for necessary business-related expenses. *Id*.

Class treatment is plainly superior to dozens and possibly thousands of individual actions. *Ambriz v. Coca-Cola Co.*, No. CV 14-00715 SVW, 2015 WL

22

12683823 at *4 (C.D. Cal. March 11, 2015) (class resolution of plaintiff's claims would be "more efficient and fairer than individual lawsuits."). Because the claims are relatively modest, and the filing fees and other litigation costs would inevitably exceed any potential recovery, it would be economically infeasible for most Class Members to litigate their claims separately. Matern Decl. ¶38. Trying potentially thousands of cases individually would require substantial repetition of evidence and could result in conflicting judgments while imposing an extraordinary burden on the Parties' and the Court's resources. *Id.* Moreover, Class Members' claims can be proven using common class-wide methods of proof, including defendants' uniform company-wide policies and practices and Class Members' timekeeping and payroll records. *Id.*

## VI.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   General Principles.

At the preliminary approval stage, Courts generally look at whether the proposed settlement is non-collusive and within the range of possible final approval. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.13 (5th ed., 2014). As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should preliminarily approve the Settlement. *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation, Third* § 30.41 at p. 237 (Federal Judicial Center 1995)). A full fairness analysis follows at the final approval stage, after Class Members have an opportunity to be heard regarding the Settlement. *Ambriz*, 2015 WL 12683823 at *5, n. 3.

**B.**      **The Settlement is the Product of Arms-Length, Non-Collusive Negotiations, has no Obvious Deficiencies, and Complies with the 2018 Amendments to Preliminary Approval Requirements and Standards.**

As of December 1, 2018, Federal Rule of Civil Procedure 23 was amended, and preliminary approval is now required before ordering notice of a proposed settlement. Rule 23(e)(1) now requires the parties to demonstrate that the court will be able to approve the proposed settlement and certify the class, if not already certified, pursuant to the criteria listed in (e)(2).  As explained below, this Settlement is fully compliant with the requirements of Rule 23(e).

The Class Representative and Class Counsel have adequately represented the class.  The settlement negotiations confirm that they were conducted at arm's length as the first two conferences failed and only the mediator's second proposal was accepted.  Expert analysis was used which assured that counsel were negotiating towards the top end of damages available if the case was tried to a jury.

Defendants lodged several significant defenses. The method of distribution here makes perfect sense, because as an employment wage case, the damages are directly tied to the number of hours and shifts worked and pay statements issued. Those all form the basis for the Settlement and the distribution of benefits.  Class Counsel's fee award of one-third percentage of the common fund is reasonable under federal law (see discussion *infra*).  Lastly, there are no side agreements under Rule 23(e)(3) involved in this case beyond the actual Agreement.

**1.      The Settlement is non-collusive.**

The Settlement is the product of two unsuccessful formal settlement conferences with a magistrate judge from this Court, a full-day mediation session with a mediator, months of subsequent settlement discussions and the acceptance of a mediator's second proposal, and is non-reversionary. Matern Decl. ¶¶15-18; Agreement ¶¶8,14, 31.

**2.      The Settlement contains no "obvious deficiencies."**

The Settlement contains none of the provisions that courts sometimes identify as raising cause for concern.

### a.      The Settlement provides substantial monetary relief to the Class.

The Settlement provides a substantial monetary fund for Class Members in the amount of $2,750,000.00 with an average recovery of $1,056.86 per Class Member. Matern Decl. ¶20.

### b.      The distribution plan treats all Class Members equally and is fair and reasonable.

The Settlement provides for all Participating Settlement Class Members to receive Individual Settlement Payments based on fair criteria and a fair distribution formula largely based upon their workweeks worked. Agreement ¶36(a). Each Settlement Class Member who can be located will be mailed a payment. Agreement ¶¶40-42. To protect all Settlement Class Members' interests, the Settlement incorporates procedures to ensure that as many Class Members as possible can be located. Agreement ¶¶40-42.

### c.      The release is coextensive with the operative complaint.

The release given by Class Members is fair and reasonable because it is limited to those claims that were or could have been alleged in the operative complaints in the Actions for harms arising during the Class Period. Agreement ¶21.

### d.      The proposed Class Representative Enhancement payment is fair and reasonable.

Although plaintiff is eligible to receive an Enhancement Payment in addition to his Individual Settlement Payment, the Settlement is not contingent on Court approval of the Enhancement Payment because any amount that is not approved by the Court will be added to the Net Settlement Amount for distribution to the other Participating Settlement Class Members. Agreement ¶31. Because plaintiff actively participated in the Action, contributing his time and effort, placed himself at risk in

25

using his name to prosecute this lawsuit, put the interests of the Class ahead of his own interests, and is giving defendants a broader release than the other Participating Settlement Class Members, the requested Enhancement Payment of $15,000.00 is fair and reasonable. Matern Decl. ¶¶36-39; Thompson Decl. ¶¶16-23.

### e.    The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved.

The attorneys' fees and costs provisions of the settlement are similarly fair and reasonable. The settlement permits Class Counsel to seek attorneys' fees under the common fund method of one-third of the Class Settlement Amount. Agreement ¶¶2, 32.

The requested one-third fee is consistent with fee awards provided under the common fund doctrine in the Ninth Circuit. This percentage of the common fund is in line with other attorney fees awards in the Ninth Circuit. *See, e.g. Lafitte v. Robert Half Int'l Inc.,* 1 Cal. 5th 480, 506 (2016) (affirming one-third award); *Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (approving one-third award); *Boeing v. Van Gemert* 444 U.S. 472, 478 (1980); *Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 679, 702 (1988); and *In re Hill,* 775 F.2d 1037, 1041 (9th Cir. 1985).  The percentage is properly based upon the gross settlement amount, rather than upon the amount of funds distributed to class members.  *Williams v. MGM-Pathe Communications Co*. 129 F.3d 1026, 1027 (9th Cir. 1997).

A recent district court decision in a wage and hour class action like this one, noted that [w]ith respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small." (*Espinosa v. California College of San Diego, Inc*., No. 17 CV 744-MMA (BLM), 2018 WL 1705955, at *9 (S.D. Cal. April 9, 2018), citing Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 15:83.) The district court further noted that, "California cases in which the

---

26

common fund is small tend to award attorneys' fees above the 25% benchmark." (*Espinoza*, *supra*, 2018 WL 1705955 at *9 citing *Craft v. Cnty. of San Bernardino* (C.D. Cal. 2008) 624 F.Supp.2d 1113, 1127 (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark). The court's decision provided a compilation of cases in support:

> Finally, the Court considers awards made in similar cases. See *Vizcaino*, 290 F.3d at 1048–50. The 30% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions. See *Adoma*, 913 F.Supp.2d at 982-85 (reducing attorneys' fees award from 33.3% to 29%); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *9-14 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees of one-third of the settlement fund in a wage and hour class action); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the settlement fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33 percent of the common fund and collecting cases regarding the same); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354- SKO, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012) (awarding the requested 33 percent of the class recovery); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI SKO, 2012 WL 5364575, at *7-10 (E.D. Cal. Oct. 31, 2012) (awarding 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33.33 percent of the common fund); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (awarding 30 percent of the common fund); *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *7-8 (N.D. Cal. June 27, 2014) (awarding 30 percent of the common fund).

(*Espinoza*, *supra*, 2018 WL 1705955 at *10.)

The fee percentage requested is less than that charged by Class Counsel for other employment cases. Matern Decl. ¶33. MLG undertook the Action with payment deferred to the end of the case, and then, of course, contingent on the outcome. *Id*. MLG's efforts have resulted in substantial benefits to the Participating Settlement Class Members in the form of a significant settlement fund established to

27

compensate them for defendants' allegedly unlawful conduct. *Id.*

Class Counsel will seek reimbursement of their actual litigation expenses which are currently $37,355.03. Agreement ¶2; Matern Decl. ¶34.

**C. The Settlement Is Well Within the Range of Possible Approval.**

At the preliminary approval stage, courts often tentatively assess the factors that will go into a final fairness determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount of the settlement; (4) the extent of discovery completed and the stage of the proceedings; and (5) the experience and views of counsel. *See, e.g.*, *Ambriz*, 2015 WL 12683823 at *5; *Moshogiannis v. Security Consultants Grp., Inc.*, No. 10-05971, 2012 WL 423860 at *5 (N.D. Cal. Feb. 8, 2012); *Gardner v. GC Servs., LP*, No. 10-0997, 2011 WL 5244378 at *6 (S.D. Cal. Nov. 1, 2011). All of these factors indicate that the Settlement is well within the range of reasonableness, and the Court should direct notice to be issued to Class Members.

**1. The Strength of Plaintiff's Case on the Merits Balanced Against the Risk, Expense, and Likely Duration of Further Litigation Weigh in Favor of the Settlement.**

The anticipated class recovery (Net Settlement Fund) under the Settlement is $1,690,978.30. Matern Decl. ¶20. The following factors bear on the amount of the compromise.

Although plaintiff strongly believes in the merits of his claims, a legitimate controversy exists over them. Matern Decl. ¶23. For example, plaintiff contends that defendants failed to compensate employees for all time spent performing work before and after their shifts and during meal and rest breaks. *Id.* However, defendants assert that employees were properly paid for all hours worked, received all regular and overtime wages to which they were entitled, were provided compliant meal and rest breaks in accordance with California law, received accurate wage statements, were timely paid all wages owed to them upon separation and otherwise and were properly reimbursed for necessary business-related expenses.

28

*Id.* Defendants would further contend that the Action is not suitable for class or representative treatment and a trial would be unmanageable. *Id.*

While plaintiff has calculated defendants' base potential exposure to be over $22 million, this estimate does not take into account the substantial risks involved in litigating the Actions, including that the courts may deny class certification; the expensive, time-consuming, and extremely uncertain proposition of proving the amount of wages due to each Class Member; the prospect that the courts would, in their discretion, reduce PAGA penalties; the likelihood that any verdict will inevitably lead to one or more appeals; further litigation will cause inconvenience, distraction, disruption, delay, expenditures and recovery disproportionate to the potential benefits of continued litigation; and this area of the law is constantly evolving creating uncertainty for employees.  *Id.* Matern Decl. ¶¶23-25.

In contrast, because of the proposed settlement, Class Members will receive timely and certain relief and avoid the risk of an unfavorable judgment and a questionable appellate outcome. Matern Decl. ¶25. Such a result is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

In sum, when the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, it is clear that the Class Settlement Amount of $2,750,000.00 is fair, adequate and reasonable. Matern Decl. ¶25. The risk that this Court may deny class certification is obviated by the Settlement.  *Id.*  Class Members will receive timely relief and avoid the risk of an unfavorable judgment. *Id.* Thus, the overall benefits of the proposed Settlement outweigh the potential risks, expense and likely duration of further litigation. *Id.* For these reasons, plaintiff and Class Counsel support the proposed Settlement as being in the best interests of the Class.  *Id.*

### 2.     The Overall Recovery Is Substantial.

The $2,750,000.00 Class Settlement Amount with a Net Settlement Fund of 1,609,978.30 is substantial.

### 3.     The Stage of the Proceedings.

The stage of the litigation further supports the Settlement. MLG counsel investigated and researched plaintiff's claims, conducted discovery, received substantial payroll, timekeeping and other employment records, retained an expert who analyzed the pertinent data, attended three settlement conferences and mediation, and engaged in months of additional settlement discussions and thus is aware of the possible outcomes. Matern Decl. ¶¶7-20.  This factor weighs in favor of Settlement.

### 4.     Highly Experienced Class Counsel Supports the Settlement.

Class Counsel is highly experienced in class litigation. Matern Decl. ¶¶27-33. Class Counsel's endorsement of the Settlement as fair, reasonable, and adequate in light of the risks of further litigation and recommendation that it be approved "is entitled to significant weight, and weighs in favor of settlement." *See, e.g.*, *Ambriz*, 2015 WL 12683823 at *6; *Morales v. Stevco, Inc.*, 2011 WL 5511767 at *11 (E.D. Cal. Nov. 10, 2011).

### D.     Judicial Approval of Collective Action Settlements.

The FLSA authorizes an employee to bring a collective action "on behalf of similarly situated employees." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir.2000) (citing 29 U.S.C. § 216(b)). Settlements of FLSA collective action claims require court approval. *Jones v Agilysys, Inc.*, Case No: C 12--03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 9, 2014). When evaluating an FLSA settlement, courts apply the standard set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982) and consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Dunn v. Teachers Ins. & Annuity Assoc'n*

*of Am.*, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (internal citations omitted). Here, there can be no doubt that this settlement represents a bona fide dispute regarding whether Plaintiff has alleged legitimate class claims. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are legitimate questions about the existence and extent of [the d]efendant's FLSA liability.")

Plaintiff also maintains that all class members were uniformly subject to the same policies and procedures. Specifically, Plaintiff alleges that Defendants had the following policies and procedures that applied uniformly to the Class:

(1)    Defendants had a meal break policy and practice that was non-compliant;

(2)    Defendants had a rest break policy that was non-compliant;

(3)    Defendants had a practice of not providing Class Members with premium payments for non-compliant meal and rest breaks;

(4)    Defendants had a practice of not keeping accurate records of Class Members' hours of work;

(5)    Defendants had a practice of not paying Class Members for all hours actually worked;

(6)    Defendants had a practice of failing to provide reimbursements for necessary business-related expenses;

(7)    Defendants had a practice of not providing Class Members with accurate itemized statements including total hours worked and all applicable hourly rates in effect during the pay period; and

(8)    Defendants had a practice of not paying all final wages upon termination or resignation.

Plaintiff maintains that all Class Members suffered the same injuries in the same manner as a result of Defendants' same common policies. Further, the settlement is fair and reasonable given the substantial risk presented by continued

31

litigation and the significant recovery, as described above and below.

## VII. THE PAGA PENALTIES SECURED BY THE SETTLEMENT ARE GENUINE AND MEANINGFUL AND FULFILL PAGA'S UNDERLYING PURPOSE TO BENEFIT THE PUBLIC

The PAGA statute provides that "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part." Cal. Lab. Code, § 2699(l)(2). The statute, however, does not require a two-step process or otherwise mimic the class action approval requirements when the parties reach a settlement only as to PAGA civil penalties. *Salazar v. Sysco Central Cal., Inc.*, 2017 WL 1135801 (E.D. Cal. Feb. 2, 2017) at *2 (rejecting the application of class action settlement rules and procedures for PAGA settlement approval).

In the absence of an explicit statutory requirement, the LWDA has provided guidance, explaining that courts should evaluate settlements of PAGA claims based on whether "'the relief provided for under the PAGA [is] genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc.,* 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). When evaluating a PAGA settlement, the court should analyze whether the amount of civil penalties obtained is "genuine and meaningful" in light of PAGA's statutory purpose.

Under the general provisions of PAGA's scheme, 75% of the civil penalties recovered go to the State, while the remaining amount is given to the aggrieved employees. Cal. Lab. Code, § 2699(i). The PAGA action is one of the "primary mechanisms for enforcing the Labor Code." *Iskanian,* 59 Cal.4th at 383. "Unlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *McKenzie v. Federal Exp. Corp.,* 765 F.

32

CASE NO. 20-CV-371-JLS(MSB)
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Supp. 2d 1222, 1233. (C.D. Cal. 2011). PAGA penalties do not seek damages that are compensatory in nature. *ZB, N.A. v. Superior Court,* 8 Cal.5th 175, 188(2019).

Here, the Settlement allocates $100,000.00 to the State and allegedly aggrieved employees that is genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and thus fulfills the underlying purpose of the statute. This represents 3.6% of the Class Settlement Amount and is well within the range of amounts approved by courts in California. See *Andres v. Laboratory Corporation of America*, No. 2:13-cv-08773-GW-VBK (C.D. Cal. Nov. 3, 2015) (gross settlement fund of $520,000, of which $5,000 (or 1%) was allocated to the settlement of PAGA penalties); *Hightower v. JPMorgan Chase Bank, N.A.*, No. 2:11-cv-01802-PSG-PLA (C.D. Cal. Oct. 5, 2015; Judge Philip S. Gutierrez) (gross settlement fund of $12 million, of which $25,000 (or 0.2%) was allocated to the settlement of PAGA penalties); *Hicks v. Toys 'R Us, Inc.*, 2:13-cv-01302-DSF-JCG (C.D. Cal. Aug. 4, 2014; Judge Dale S. Fischer) (gross settlement fund of $4 million, of which $5,000 (or 0.13%) was allocated to the settlement of PAGA penalties); *Valdez v. Kevin Jewelers, No. 502920* (Los Angeles County Superior Court Sept. 24, 2015; Judge John Shepard Wiley, Jr.) (gross settlement fund of $345,000, of which $5,000 (or 1.4%) was allocated to the settlement of PAGA penalties); *Mendiola v. Tyco Electronics Corp.*, RIC 1400721 (Riverside County Super. Ct. May 29, 2015; Judge John W. Vineyard) (gross settlement fund of $495,000, of which $20,000 (or 4%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or 0.3%) was allocated to the settlement of PAGA penalties).

Plaintiff's settlement of PAGA civil penalties thus achieves PAGA's objectives by imposing civil penalties that are sufficient "to punish and deter" defendants from future Labor Code violations, but without being "unjust, arbitrary

and oppressive, or confiscatory."

## VIII.  THE PROPOSED NOTICE SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(c)(2)(B) requires that absent Settlement Class Members receive the "best notice that is practicable under the circumstances." For a Rule 23(b)(3) class, the notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations marks and citations omitted).  Such notice is reasonable if mailed to each member of a settlement class "who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice meets all of the notice requirements of Rule 23(b)(3). The Notice Packet explains in easily understood language what the case is about; the class definition and claims; the Class Settlement Amount and approximate Individual Payment Amount each Participating Settlement Class Member will receive; the requested amounts to be paid to Class Counsel and Enhancement Payment to the proposed Class Representative; the right of Settlement Class Members to attend the final approval hearing, to opt-out or object to the Settlement and the process by which they can do so; the binding effect of the Settlement on those who do not request exclusion; a description of the Claims being released; and

the details of the final fairness hearing. Agreement, Ex. A. Settlement Class Members will have 30 days to request exclusion from or object to the Settlement. Agreement ¶¶24, 46, 52.

The Parties' proposed plan for directing notice to the Class is also "the best notice that is practicable under the circumstances." Using last-known addresses, the Settlement Administrator will send the notice by first class U.S. Mail to all Class Members. Agreement ¶40. Further, the Settlement Administrator will perform skip traces or other means to obtain the correct address of any Settlement Class Members for whom the notice is returned as undeliverable, and shall attempt re-mailings where new addresses are obtained. Agreement ¶41.

Plaintiff is not aware of any additional method of distribution that would be reasonably likely to result in the receipt of notice by Class Members who might otherwise not receive notice pursuant to the proposed distribution plan. For these reasons, the Settlement's plan for directing notice to Class Members satisfies Rule 23(c)(2)(B). *See, e.g.*, *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortg. Co.*, No. 07-0994 DOC, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

## IX.    SCHEDULE FOR FINAL APPROVAL

Because the Action meets the requirements for certification of a settlement class and the Settlement meets the requirements for preliminary approval, the Court should direct notice to issue and set a final fairness hearing to decide whether to grant final approval to the Settlement, as well as whether to grant the proposed Class Representative's application for an Enhancement Payment and Class Counsel's motion for attorney's fees and costs. See Fed. R. Civ. P. 23(e)(2).

///

///

///

## X.      CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant preliminary approval of the Settlement, approve the proposed class notice, and set a final approval hearing.

Dated: October 21, 2021                    MATERN LAW GROUP, PC


By:      /s/ Scott A. Brooks
         Matthew J. Matern
         Scott A. Brooks
         Attorneys for plaintiff individually and on
         behalf of all others similarly situated