Matthew J. Matern (SBN 159798)
  mmatern@maternlawgroup.com
Scott A. Brooks (SBN 160115)
  sbrooks@maternlawgroup.com
MATERN LAW GROUP, PC
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266

Attorneys for plaintiff Arthur Thompson,
an individual, and on behalf of others
similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR THOMPSON, an individual, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NSC TECHNOLOGIES, LLC, a Virginia limited liability corporation; BAE SYSTEMS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 20-CV-371-JO(MSB)<br><br>Class Action<br><br>PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:  November 30, 2022<br>Time: 9:30 a.m.<br>Courtroom: 4C |

To this Honorable Court, all parties and their attorneys of record:

Please take notice that on November 30, 2022 at 9:30 a.m. in Courtroom 4C (4th Floor) of the United States District Court for the Southern District of California located at 221 W. Broadway, San Diego, California, plaintiff Arthur Thompson, individually and on behalf of all others similarly situated will, and hereby does, move the Court:

1. To preliminarily approve the Stipulation of Class Action Settlement and Release ("Agreement," Exh. 1 to Declaration of Matthew J. Matern) between plaintiff and defendants NSC Technologies, LLC ("NSC") and BAE Systems San Diego Ship Repair Inc. ("BAE SDSR"), erroneously sued as "BAE Systems, Inc."

2. To certify for settlement purposes only, the Settlement and Collective Classes, both defined as, "all individuals employed by NSC and placed to work at the BAE Systems San Diego Ship Repair Inc. facility at 2205 E. Belt Street in San Diego, California, as hourly non-exempt employees between January 10, 2016 and August 8, 2021";

3. To approve Arthur Thompson as the representative of the certified classes and to appoint Matthew J. Matern, Scott A. Brooks and Matern Law Group, PC as counsel for the certified classes;

4. To approve the form and authorize the mailing of the proposed notice of settlement and set dates for the submission of opt-outs and objections;

5. To set the date for the fairness hearing regarding final approval of the Agreement, Class Representative Enhancement Payments, Settlement Administrator's fees; and Class Counsel's motion for an award of attorneys' fees and costs; and

6. To make such other orders as necessary to effectuate the settlement.

This is a renewed motion brought in conjunction with a proposed Third Amended Complaint which is brought to address the Court's questions regarding the scope of the release of the Fair Labor Standards Act claim and the investigation of possible practices that may have led to minimum wage and overtime wage violations as alleged in the complaint (see Section III, p. 10). This motion is brought on the further grounds that the Settlement Agreement, which provides for a non-reversionary payment of $2,750,000.00, "is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F.Supp.2d 561, 570 n.12 (E.D. Pa. 2001). The proposed notice (Exh. B to the Agreement) of settlement to be sent by United States Mail complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the Settlement, including Plaintiff's motion for attorneys' fees and costs, before deciding whether to opt-out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

The motion is based upon this Notice, the attached Memorandum of Points and Authorities and accompanying Supplemental Declaration of Matthew J. Matern and the previously submitted Motion for Preliminary Approval and Declarations of Matthew J. Matern and Arthur Thompson

///

///

///

///

///

///

1    (Dkt. Nos. 58, 58-1 and 58-2) and exhibits, the complete file and records in this

2    action, and such other evidence and argument that may be presented at the time of

3    the hearing.

4    Dated: October 18, 2022         MATERN LAW GROUP, PC

5

6                                    By: _____

7                                         Matthew J. Matern

8                                         Scott A. Brooks
                                          Attorneys for plaintiff Arthur Thompson,
9                                         an individual, and on behalf of others
                                          similarly situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ................................................................12

4    II.    THE PARTIES ................................................................13

5    III.    PROCEDURAL BACKGROUND ........................................13

6    IV.    INVESTIGATION AND DISCOVERY ................................14

7    V.    SETTLEMENT ................................................................15

8    VI.    KEY SETTLEMENT TERMS..............................................16

9         A.    Definition of Settlement Classes....................................16

10         B.    Allocation of the Settlement. .........................................16

11              1.    Administration Costs. ...........................................16

12              2.    Class Counsel's Attorneys' Fees and Costs. ............16

13              3.    Plaintiff's Enhancement Payment. .........................17

14              4.    LWDA Payment. .................................................17

15              5.    Defendants' Payroll Taxes....................................17

16              6.    Allocation of Net Settlement Amount....................17

17              7.    Unapproved Funds...............................................18

18              8.    Uncashed Checks.................................................18

19         C.    Notice of the Proposed Settlement....................................18

20         D.    Objections and Exclusion Requests. .................................18

21         E.    Releases................................................................19

22         F.    Posting of Settlement Agreement on Settlement Administrator's
23              Website................................................................19

24    VII.    THE PROPOSED SETTLEMENT CLASS AND FLSA
         COLLECTIVE SHOULD BE PROVISIONALLY CERTIFIED. ..............20

25         A.    The Requirements of Rule 23(a) are Satisfied....................20

26              1.    Rule 23(a)(1): Numerosity.....................................20

27              2.    Rule 23(a)(2): Commonality. .................................20

28

---

5

3.    Rule 23(a)(3): Typicality. .........................................21

4.    Rule 23(a)(4): Adequacy of Representation. ...........................21

B.    The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied. ..................................................22

VIII.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................22

A.    General Principles. ...............................................22

B.    The Settlement is the Product of Arms-Length, Non-Collusive Negotiations, has no Obvious Deficiencies, and Complies with the 2018 Amendments to Preliminary Approval Requirements and Standards. .................................................23

1.    The Settlement is non-collusive. .............................24

2.    The Settlement contains no "obvious deficiencies." ..............24

a.    The Settlement provides substantial monetary relief to the Class. ........................................24

b.    The distribution plan treats all Class Members equally and is fair and reasonable. ...................24

c.    The release is coextensive with the operative complaint. ........................................24

d.    The proposed Class Representative Enhancement payment is fair and reasonable. ...................25

e.    The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved. ..........25

C.    The Settlement Is Well Within the Range of Possible Approval. .....26

1.    The Strength of Plaintiff's Case on the Merits Balanced Against the Risk, Expense, and Likely Duration of Further Litigation Weigh in Favor of the Settlement. .........................27

2.    The Overall Recovery Is Substantial. .......................28

3.    The Stage of the Proceedings. ..............................28

4.    Highly Experienced Class Counsel Supports the Settlement. ..................................................28

D.    The Proposed FLSA Collective Action Settlement Warrants Judicial Approval. ..............................................28

1.    The range of possible recovery supports approval. ................30

6

2.  The stage of proceedings and amount of discovery completed, the seriousness of the litigation risks faced by the parties. ................................................................... 31

3.  The scope of the release provision in the settlement agreement is limited to claims based on the factual allegations in the operative complaint and is supported by due investigation. ........................................................ 31

4.  The experience and views of counsel and the opinion of participating plaintiff and the possibility of fraud or collusion. .......................................................................... 33

IX.   THE PAGA PENALTIES SECURED BY THE SETTLEMENT ARE GENUINE AND MEANINGFUL AND FULFILL PAGA'S UNDERLYING PURPOSE TO BENEFIT THE PUBLIC ...................... 33

X.    THE PROPOSED NOTICE SHOULD BE APPROVED ........................... 34

XI.   CONCLUSION ............................................................................ 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ambriz v. Coca-Cola Co.*,
 No. CV 14-00715 SVW, 2015 WL 12683823
 (C.D. Cal. March 11, 2015) ......................................................................22, 26, 28

*Ambrosino v. Home Depot. U.S.A., Inc.*,
 2014 WL 1671489 (S.D.Cal. Apr. 28, 2014) ...................................................29, 31

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997).................................................................................................21

*Armstrong v. Davis*,
 275 F.3d 849 .............................................................................................................20

*Barbosa v. Cargill Meat Solutions Corp.*,
 297 F.R.D. 431 (E.D. Cal. July 2, 2013) ................................................................25

*Collins v. Cargill Meat Solutions Corp.*,
 274 F.R.D. 294 (E.D. Cal. 2011) .............................................................................33

*Craft v. Cnty. of San Bernardino*,
 (C.D. Cal. 2008) 624 F.Supp.2d 1113 ....................................................................26

*Dunn v. Teachers Ins. & Annuity Assoc'n of Am.*,
 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)............................................................29

*Espinosa v. California College of San Diego, Inc.*,
 No. 17 CV 744-MMA (BLM), 2018 WL 1705955
 (S.D. Cal. April 9, 2018) ..........................................................................................25

*Garcia v. Jambox, Inc.*,
 No. 14–cv–3504 (MHD), 2015 WL 2359502 (S.D.N.Y. Apr. 27, 2015) .............31

*Gardner v. GC Servs., LP*,
 No. 10-0997, 2011 WL 5244378 (S.D. Cal. Nov. 1, 2011) ...................................26

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...........................................................................20, 22

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007).....................................................................22

*In re Vitamins Antitrust Litig.*,
    2001 WL 856292 (D.D.C. July 25, 2001) .............................................................23

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ............................................................................28

*Misra v. Decision One Mortg. Co.*,
    No. 07-0994 DOC, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ......................35

*Morales v. Stevco, Inc.*,
    2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ......................................................28

*Moshogiannis v. Security Consultants Grp., Inc.*,
    No. 10-05971, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012)..................................26

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)....................................................................27, 31

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016)................................................................34

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ..............................................................................21

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ..................................................29, 30, 32

*Sharp v. CGG Land (U.S.), Inc.*,
    840 F.3d 1211 (10th Cir. 2016) ............................................................................30

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D. Cal. 2009) ..................................................................33

*Wright v. Linkus Enter., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009)..........................................................................35

**State Cases**

*Lafitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016)............................................................................................25

*See's Candy Shops, Inc. v. Superior Court*,
   210 Cal.App.4th 889 (2012) ......................................................29

**Federal Statutes**

28 U.S.C. § 1441 .......................................................................13

28 U.S.C. § 1453 .......................................................................13

29 U.S.C. § 201 .........................................................................29

29 U.S.C. § 207(e)(2) ................................................................31

29 U.S.C. § 216(b) ....................................................................20

**State Statutes**

California Civil Code § 1542 ......................................................19

**Federal Rules**

Fed. R. Civ. P. 23 ......................................................................20

Fed. R. Civ. P. 23(a) .................................................................20

Fed. R. Civ. P. 23(a)(1) ............................................................20

Fed. R. Civ. P. 23(a)(2) ............................................................20

Fed. R. Civ. P. 23(a)(3) ............................................................21

Fed. R. Civ. P. 23(a)(4) ............................................................21

Fed. R. Civ. P. 23(b)(3) ......................................................22, 34

Fed. R. Civ. P. 23(c)(2)(B) ..................................................34, 35

Fed. R. Civ. P. 23(e) .................................................................23

Fed. R. Civ. P. 23(e)(1) ............................................................23

Fed. R. Civ. P. 23(e)(3) ............................................................23

**Other Authorities**

4 Newberg on Class Actions, § 13.13 (5th ed., 2014) ...............22

*Manual for Complex Litigation, Third § 30.41*
    (Federal Judicial Center 1995) ........................................................................13, 23

Rubenstein, Conte and Newberg, Newberg on Class Actions at § 15:83 .................26

CASE NO. 20-CV-371-JO (MSB)
PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.    INTRODUCTION

Plaintiff Arthur Thompson brings this renewed motion for preliminary approval following the Court's denial of the previous motion without prejudice. Dkt. no. 58. Having addressed the Court's comments, preliminary approval of the global $2,750,000.00 non-reversionary settlement is sought on behalf of the approximately 1,600 similarly situated putative non-exempt employees of defendant NSC Technologies, LLC ("NSC") who worked at defendant BAE Systems San Diego Ship Repair Inc.'s ("BAE SDSR") shipyard.

This Settlement was reached after two early neutral evaluation sessions with Magistrate Judge Berg followed by a full-day private mediation and then nearly four more months of negotiations, all of which culminated in the Parties' acceptance of the mediator's second proposal. The Settlement results from the Parties' well-informed understanding of the strengths and weakness of both the claims and the defenses and it provides compensation to Class Members while avoiding the cost, risk, and delay of further litigation, and the uncertainties of certification and trial.

Plaintiff moved for preliminary approval of the proposed settlement on October 21, 2021. Dkt. No. 58. The motion was denied without prejudice to permit Plaintiff to submit further evidence of investigation into possible practices leading to minimum and overtime violations. Dkt. No. 71 at pp.12-13.

If approved, the Settlement will result in an anticipated recovery of $1,690,978.30 for the Class with an average payment of $1,056.86. The Settlement allocates $100,000.00 to PAGA penalties, 75% of which will be paid to California's Labor and Workforce Development Agency ("LWDA").

The Settlement "falls within the range of possible approval," the standard

---

[1] With the Court's indulgence, as this is a renewed motion following a hearing and order, the facts and argument are streamlined.

governing preliminary approval. *Manual for Complex Litigation, Third* § 30.41 (Federal Judicial Center 1995). It thus warrants notice to the putative classes of the settlement terms and a final approval hearing to consider whether the Settlement is fair, reasonable and adequate. Plaintiff requests that the Court certify the proposed settlement classes and grant preliminary approval of the Settlement.

## II.    THE PARTIES

Plaintiff is a former hourly, non-exempt employee of NSC who worked as a welder at the BAE SDSR's shipyard located at 2205 E. Belt Street in San Diego, California from April 2018 through January 2019. He previously worked at the shipyard from December 2016 through July 2017. Thompson Decl. ¶4, Dkt. 58-2.

NSC is a staffing and recruiting company for industries including shipbuilding and repair. Matern Decl. ¶4. BAE SDSR provides ship repair services including for the U.S. Navy, at the shipyard which it leases from the Port of San Diego. *Id.*; Thompson Decl. ¶4.

## III.    PROCEDURAL BACKGROUND

Plaintiff commenced this suit on January 10, 2020 ("the Action"). Exh. A to Dkt. 1-2; Declaration Of Matthew J. Matern In Support Of Plaintiff's Renewed Motion For Preliminary Approval Of Class Action Settlement ("Matern Decl.") ¶8. On January 14, 2020, plaintiff filed a first amended complaint adding a cause of action for civil penalties under the PAGA. Exh. B to Dkt. 1-2; Matern Decl. ¶9. Defendants jointly removed the Action to this Court on February 27, 2020. 28 U.S.C. §§1441 and 1453. Dkt. 1; Matern Decl. ¶10.

Following the proceedings discussed below and settlement, the Second Amended Complaint was filed adding a cause of action for violation of the Fair Labor Standards Act. Dkt. No. 60. In connection with Plaintiff's Renewed Motion for Preliminary Approval, Plaintiff has filed a Third Amended Complaint to provide further factual detail underlying the causes of action alleged.

///

## IV.    INVESTIGATION AND DISCOVERY

Plaintiff retained Matern Law Group ("MLG" or "Class Counsel") to represent him in his claims against defendants. Matern Decl. ¶6. Upon being retained, MLG interviewed plaintiff at length, obtained important information and documents from plaintiff regarding his employment, defendants' wage and hour policies and practices, and conducted research regarding plaintiff's claims and defendants' anticipated defenses. Matern Decl. ¶¶6, 11.

Prior to two early settlement conferences with Magistrate Judge Berg, defendants informally produced a sampling of time and payroll data as well as defendants' written policies pertaining to the claims alleged. Matern Decl. ¶12. When the Action did not resolve, formal discovery commenced. *Id.* Plaintiff propounded over 80 document requests and 20 interrogatories on both defendants, to which defendants responded and produced hundreds of pages of documents. *Id.* Plaintiff responded to defendants' 25 document requests with responsive documents and sat for a full day of deposition. *Id.*

As part of the preparation for settlements discussions and mediation, plaintiff retained an expert who reviewed and analyzed defendants' time and payroll records and prepared an analysis which was instrumental in creating a damage model for the mediation. Matern Decl. ¶13. The documents and data which defendants produced permitted the Parties to evaluate their respective positions. Matern Decl. ¶15.

During this period and before entering into the settlement, more than 40 current and former employees were interviewed about the operations of the shipyard. Matern Decl. ¶14. These employees worked in myriad jobs throughout the shipyard including assembler, cable puller, data analyst, electrician, electrician helper, fire watch, fitter, large machine driver, improver installer, journeyman shipper, labor helper, machinist, paint improver, pipe fitter, rigger, safety technician, security, sheet metal worker, ship fitter, and welder. Matern Decl. ¶14. These employees variously worked as non-exempt employees at times between 2013 and

the end of the class period (August 8, 2021) and all of them worked at some point during the class period, making them members of the proposed classes. Matern Decl. ¶14. Importantly, together these 40+ employees could provide a wealth of information regarding shipyard operations both on and off-ship including hours, time keeping, wages, security checks, meal and rest periods, clothing, equipment, etc. from this spectrum of jobs throughout the shipyard over the course of the entire class period. Matern Decl. ¶14.

## V.    SETTLEMENT

The Parties participated in an early neutral evaluation on April 15, 2020 and a follow-up Settlement Conference on August 26, 2020, both with Magistrate Judge Michael S. Berg, neither of which ended in settlement. Dkts. 9, 13, 20; Matern Decl. ¶16. Following months of formal discovery had been conducted, the Parties agreed to mediate. Matern Decl. ¶17. On February 23, 2021, the Parties participated in full day mediation with mediator Deborah Saxe. *Id*. The Action did not resolve at the mediation, however, Ms. Saxe continued facilitating negotiations between the Parties and nearly four months later, on June 9, 2021, a settlement was finally reached, subject to a long-form agreement. *Id*. The Stipulation of Class Action Settlement and Release ("Agreement") was executed by all Parties on September 2, 2021. *Id.* and Exh. 1.

The mediation was conducted at arm's length and was adversarial. Matern Decl. ¶18. The Parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate its position through trial and appeal if a settlement had not been reached. *Id*.

The Settlement is the result of an informed and detailed analysis of Defendants' potential liability of total exposure in relation to the costs and risks associated with continued litigation. Matern Decl. ¶19. Based on MLG's pre-litigation investigation, discovery, and expert analysis, MLG was able to act intelligently and effectively in negotiating the proposed Settlement. *Id*.

1    **VI.    KEY SETTLEMENT TERMS**

2          **A.    Definition of Settlement Classes.**

3          The Agreement proposes certification of a Settlement Class of, "all

4    individuals employed by NSC and placed to work at the BAE Systems San Diego

5    Ship Repair Inc. facility at 2205 E. Belt Street in San Diego, California ("BAE

6    SDSR"), as hourly non-exempt employees between January 10, 2016 and August 8,

7    2021" (the Class Period).[2] Agreement ¶¶27, 65, 79. The Class is comprised of

8    approximately 1,600 persons. Matern Decl. ¶5. Plaintiff also seeks certification of a

9    FLSA Collective class with the same definition.

10          **B.    Allocation of the Settlement.**

11          The settlement provides for a non-reversionary Class Settlement

12    Amount of $2,750,000.00 ("Class Settlement Amount") inclusive of all Individual

13    Settlement Payments to Participating Class Members, the Class Representative

14    Enhancement Payment to plaintiff, the Class Counsel Award, the LWDA Payment,

15    defendants' share of taxes, and the Settlement Administration Costs. Agreement ¶8.

16              **1.    Administration Costs.**

17          Phoenix Settlement Administrators was selected as the Settlement

18    Administrator. Agreement ¶26. The administrative costs are estimated to be no more

19    than $15,000 which will be paid from the Class Settlement Amount. Matern Decl.

20    ¶20.

21              **2.    Class Counsel's Attorneys' Fees and Costs.**

22          Class Counsel will request one-third of the Class Settlement Amount, i.e.,

23    $916,666.67 for their attorneys' fees based on the common fund method plus actual

24

25    _____

26    [2] The settlement does not include employees that worked directly for BAE Systems San Diego Ship Repair Inc. or on assignment by another staffing agency, and so

27    "workweeks worked by individuals and Settlement Class Members when employed directly for BAE SDSR and/or when assigned to work at BAE SDSR by an entity

28    other than NSC during the Class Period are not included in the Released Claims." Agreement, ¶21.

costs. Agreement ¶¶2, 32.

### 3.    Plaintiff's Enhancement Payment.

The Agreement proposes an Enhancement Payment of $15,000.00 to plaintiff in recognition of his time and effort, the risks he undertook in bringing the Action and in giving defendants a broader release than other Class Members. Agreement ¶¶7, 33; Matern Decl. ¶¶51-54.

### 4.    LWDA Payment.

The Agreement allocates $100,000.00 for PAGA penalties, 75% of which ($75,000.00) shall be paid to the LWDA and 25% ($25,000.00) shall become part of the Net Settlement Amount. Agreement, ¶36.

### 5.    Defendants' Payroll Taxes.

Based on defendants' counsel's representation, defendants' share of payroll taxes is estimated to be approximately $48,869.27. Matern Decl. ¶21.

### 6.    Allocation of Net Settlement Amount.

After deducting the LWDA Payment, the Settlement Administration Costs, Class Representative Enhancement Payment, and the Class Counsel Award, the balance of the Class Settlement Amount (the "Net Settlement Amount "), estimated at $1,690,978.30, will be distributed to Participating Settlement Class Members as Individual Settlement Payments. Agreement ¶14; Matern Decl. ¶21.

The Net Settlement Amount will be apportioned to each Settlement Class Member based on their proportionate number of Workweeks, by multiplying the Net Settlement Amount by a fraction, the numerator of which is the Settlement Class Member's individual total Work Weeks, and the denominator of which is the total number of Work Weeks of all Settlement Class Members. Agreement, ¶36(a).

All Individual Settlement Payments will be allocated as follows: (i) twenty percent (20%) to settlement of wage claims and (ii) eighty percent (80%) to settlement of claims for interest and statutory penalties. Agreement, ¶58.

///

7.    **Unapproved Funds.**

Any timely submitted opt outs or reduction in the Class Representative Enhancement Payments, Class Counsel Award or Settlement Administration Costs, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Settlement Class Member so that the amount actually distributed to Participating Settlement Class Members equals 100% of the Net Settlement Amount. Agreement ¶31. There is no reversion of the Net Settlement Amount to defendants. Agreement, ¶¶14, 31.

8.    **Uncashed Checks.**

Those funds represented by settlement checks which remain un-cashed after one hundred and twenty (120) days after mailing will be transferred to the Controller of the State of California, Unclaimed Property Fund in the name of the Settlement Class Member. Agreement ¶56.

C.    **Notice of the Proposed Settlement.**

Within ten (10) days following preliminary approval, defendants will provide the Settlement Administrator with the Class List containing the full name, last known mailing address and telephone number; social security number; employment status and the respective number of workweeks each Class Member worked during the Class Period, according to defendants' records. Agreement ¶5.

Within ten days of receiving the List, the Settlement Administrator will update the addresses through the National Change of Address Database and mail the Notice Packet via first-class regular U.S. mail. Agreement ¶¶40-42. Any packets returned as undeliverable on or before the Response Deadline (30 days after initial mailing of notice) will be sent to the forwarding address provided and if none, the Settlement Administrator will perform a skip-trace or other search and re-mail the packet. Agreement ¶¶24, 41.

D.    **Objections and Exclusion Requests.**

A Class Member wishing to object to the Settlement must file a Notice of

1  Objection with the Court within thirty (30) days after the Notice Packet is initially

2  mailed to all Settlement Class Members. Agreement ¶¶24, 52. A Request for

3  Exclusion must be in writing and sent to the Settlement Administrator within the

4  same time period. Agreement ¶¶24, 46.

5      **E.    Releases.**

6      Upon the Effective Date (defined in the Agreement), the Settlement Class

7  Members, other than those who submit timely requests for exclusion, will release

8  and discharge defendants and the other Released Parties from the Released Claims,

9  as defined in the Settlement Agreement. Agreement ¶¶21, 22, 50. Settlement Class

10 Members will also consent to opt in to and release any and all overtime and

11 minimum wage claims under the FLSA by signing and cashing the settlement check

12 which shall include the language: "I understand that by signing and cashing this

13 settlement check, I consent to opt-in to the Fair Labor Standards Act ("FLSA")

14 collective action in the matter in Case No. 3:20-cv-00371-JLS-MSB in the Southern

15 District of California, entitled *Arthur Thompson v NSC Technologies, LLC et al.*,

16 and will release and waive all overtime and minimum wage claims under the FLSA

17 as set forth in the Stipulation of Class Action Settlement and Release." Agreement

18 ¶50.

19     In addition to the above release, Plaintiff will provide a general release to

20 defendants for and waive all rights and benefits under California Civil Code section

21 1542. Agreement ¶¶51, 68.

22     **F.    Posting of Settlement Agreement on Settlement Administrator's**

23         **Website.**

24     Within ten (10) days of entry of the Preliminary Approval Order, the Settlement

25 Administrator will post the Agreement and any other Court-approved forms to its website.

26 Agreement, ¶43.

27 ///

28

## VII.   THE PROPOSED SETTLEMENT CLASS AND FLSA COLLECTIVE SHOULD BE PROVISIONALLY CERTIFIED.

### A.   The Requirements of Rule 23(a) are Satisfied.

Fed. R. Civ. P. 23 gives the Court "broad discretion to determine whether a class should be certified…" *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001). When considering a request for certification of a settlement class, the Court must first determine "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff seeks provisional certification of a Settlement Class and the FLSA Collective (together, "Settlement Class"). Agreement ¶¶65, 79; 29 U.S.C. § 216(b). The Settlement Class meets all the applicable standards for provisional certification for settlement purposes.

### 1.   Rule 23(a)(1): Numerosity.

The Settlement Class consists of approximately 1,600 individuals. Matern Decl. ¶5. This number plainly satisfies the numerosity standard, which requires merely that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### 2.   Rule 23(a)(2): Commonality.

The Action involves numerous questions of law and fact that are common to the Class, satisfying the requirements of Rule 23(a)(2). The claims being settled turn on, *inter alia*, the alleged unlawful and uniform policies and practices of paying employees based on their scheduled time not the time they actually clocked in; not providing lawful rest or meal breaks; not paying employees premium payments for such breaks; not maintaining records of the times employees took their meal periods and instead automatically adding meal periods to their time records; requiring

employees to purchase their own tools for which they were not reimbursed; rounding; paying employees a per diem payment which was not included in the regular rate of pay used to determine their overtime rate.  Thompson Decl. ¶¶4-15; Ex. 1.

Class Members' claims can be proven using common class-wide methods of proof, including the above-referenced uniform company-wide policies and practices and Class Members' timekeeping and payroll records. Matern Decl. ¶24; Thompson Decl. ¶¶4-15.

### 3.    Rule 23(a)(3): Typicality.

Plaintiff's claims are typical of the class. The typicality standard is satisfied when "the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiff and the other class members are non-exempt employees of NSC who worked at the BAE SDSR facility in San Diego, California during the Class Period. Agreement, ¶27; Thompson Decl. ¶4. Plaintiff was subject to the same uniform policies and procedures as his fellow class members. Thompson Decl. ¶¶4-15.

### 4.    Rule 23(a)(4): Adequacy of Representation.

The adequacy of representation requirement is met where the Class Representative: (1) has common, not antagonistic, interests with unnamed Class Members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Here, plaintiff has diligently represented his former co-workers consistent with his fiduciary obligation. Thompson Decl. ¶¶17-18.

MLG satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. Matern Decl. ¶¶41-47. MLG is well-qualified to represent the Class, as the firm has extensive experience in wage and hour litigation and has served as class counsel in numerous such cases. *Id*.

### B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and focuses on the "relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022 (quotation marks and citation omitted).

Here, each of plaintiff's theories of liability presents common legal or factual questions that predominate over any individual issues. Plaintiff's meal and rest break, premium pay, off-the-clock, overtime and reimbursement theories present predominant common questions of law and fact. Thomson Decl. ¶¶4-15. Common evidence will establish that throughout the class period defendants had a class-wide policy or practice of (1) not providing lawful meal and rest breaks; (2) not paying premium payments for such breaks; (3) not paying for all time worked; (4) excluding per diem payments in the regular rate of pay for overtime wages; and (5) not reimbursing for necessary business-related expenses. *Id.*

Class treatment is plainly superior to dozens and possibly thousands of individual actions. *Ambriz v. Coca-Cola Co.*, No. CV 14-00715 SVW, 2015 WL 12683823 at *4 (C.D. Cal. March 11, 2015) (class resolution of plaintiff's claims would be "more efficient and fairer than individual lawsuits."). Because the claims are relatively modest, and the filing fees and other litigation costs would inevitably exceed any potential recovery, it would be economically unfeasible for most Class Members to litigate their claims separately. Matern Decl. ¶52.

## VIII. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. General Principles.

At the preliminary approval stage, Courts generally look at whether the proposed settlement is non-collusive and within the range of possible final approval. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.13 (5th

ed., 2014). As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should preliminarily approve the Settlement. *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation, Third* § 30.41 at p. 237 (Federal Judicial Center 1995)).

**B.    The Settlement is the Product of Arms-Length, Non-Collusive Negotiations, has no Obvious Deficiencies, and Complies with the 2018 Amendments to Preliminary Approval Requirements and Standards.**

Rule 23(e)(1) requires the parties to demonstrate that the court will be able to approve the proposed settlement and certify the class, if not already certified, pursuant to the criteria listed in (e)(2). As explained below, this Settlement is fully compliant with the requirements of Rule 23(e).

The Class Representative and Class Counsel have adequately represented the class. The settlement negotiations confirm that they were conducted at arm's length as the first two conferences failed and only the mediator's second proposal was accepted. Expert analysis was used which assured that counsel were negotiating towards the top end of damages available if the case was tried to a jury.

Defendants lodged several significant defenses. The method of distribution here makes perfect sense, because as an employment wage case, the damages are directly tied to the number of hours and shifts worked and pay statements issued. Those all form the basis for the Settlement and the distribution of benefits. Class Counsel's fee award of one-third percentage of the common fund is reasonable under federal law (see discussion *infra*). Lastly, there are no side agreements under Rule 23(e)(3) involved in this case beyond the actual Agreement.

///

23

### 1. The Settlement is non-collusive.

The Settlement is the product of two unsuccessful formal settlement conferences with a magistrate judge from this Court, a full-day mediation session with a mediator, months of subsequent settlement discussions and the acceptance of a mediator's second proposal, and is non-reversionary. Matern Decl. ¶¶16-19; Agreement ¶¶8,14, 31.

### 2. The Settlement contains no "obvious deficiencies."

The Settlement contains none of the provisions that courts sometimes identify as raising cause for concern.

#### a. The Settlement provides substantial monetary relief to the Class.

The Settlement provides a substantial monetary fund for Class Members in the amount of $2,750,000.00 with an average recovery of $1,056.86 per Class Member. Matern Decl. ¶20.

#### b. The distribution plan treats all Class Members equally and is fair and reasonable.

The Settlement provides for all Participating Settlement Class Members to receive Individual Settlement Payments based on fair criteria and a fair distribution formula largely based upon their workweeks worked. Agreement ¶36(a). Each Settlement Class Member who can be located will be mailed a payment. Agreement ¶¶40-42. To protect all Settlement Class Members' interests, the Settlement incorporates procedures to ensure that as many Class Members as possible can be located. Agreement ¶¶40-42.

#### c. The release is coextensive with the operative complaint.

The release given by Class Members is fair and reasonable because it is expressly limited to claims arising from the factual allegations in the complaint during the Class Period. Critically, the scope of the release is limited to claims "that are or could have been alleged by Settlement Class Members against NSC and/or BAE SDSR in the operative complaint in the Action, and any amendment(s) thereto,

or in the Notice of Labor Code Violations sent to the LWDA, **based on the factual allegations contained therein**..." Agreement ¶21 [emphasis added].

### d.    The proposed Class Representative Enhancement payment is fair and reasonable.

Because plaintiff actively participated in the Action, contributing his time and effort, placed himself at risk in using his name to prosecute this lawsuit, put the interests of the Class ahead of his own interests, and is giving defendants a broader release than the other Participating Settlement Class Members, the requested Enhancement Payment of $15,000.00 is fair and reasonable. Matern Decl. ¶¶51-53; Thompson Decl. ¶¶16-23. The Settlement is not contingent on Court approval of the Enhancement Payment and any amount that is not approved by the Court will be added to the Net Settlement Amount for distribution to the other Participating Settlement Class Members. Agreement ¶31.

### e.    The Settlement's provisions for attorneys' fees and costs are in the range that is routinely approved.

The attorneys' fees and costs provisions of the settlement are similarly fair and reasonable. The settlement permits Class Counsel to seek attorneys' fees under the common fund method of one-third of the Class Settlement Amount. Agreement ¶¶2, 32.

The requested one-third fee is consistent with fee awards provided under the common fund doctrine in the Ninth Circuit. This percentage of the common fund is in line with other attorney fees awards in the Ninth Circuit. *See, e.g. Lafitte v. Robert Half Int'l Inc.,* 1 Cal. 5th 480, 506 (2016) (affirming one-third award); *Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (approving one-third award.

A recent district court decision in a wage and hour class action like this one, noted that [w]ith respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small." (*Espinosa v. California College of San Diego,*

1  *Inc.*, No. 17 CV 744-MMA (BLM), 2018 WL 1705955, at *9 (S.D. Cal. April 9,

2  2018), citing Rubenstein, Conte and Newberg, *Newberg on Class Actions* at §

3  15:83.) The district court further noted that, "California cases in which the common

4  fund is small tend to award attorneys' fees above the 25% benchmark." (*Espinoza*,

5  *supra*, 2018 WL 1705955 at *9 citing *Craft v. Cnty. of San Bernardino* (C.D. Cal.

6  2008) 624 F.Supp.2d 1113, 1127 (holding attorneys' fees for large fund cases are

7  typically under 25% and cases below $10 million are often more than the 25%

8  benchmark).

9      MLG undertook the Action with payment deferred to the end of the case, and

10  then, of course, contingent on the outcome. *Id.* MLG's efforts have resulted in

11  substantial benefits to the Participating Settlement Class Members in the form of a

12  significant settlement fund established to compensate them for defendants' allegedly

13  unlawful conduct. *Id.*

14      Class Counsel will seek reimbursement of their actual litigation expenses

15  which are currently $37,355.03. Agreement ¶2; Matern Decl. ¶49.

16      **C.    The Settlement Is Well Within the Range of Possible Approval.**

17      At the preliminary approval stage, courts often tentatively assess the factors

18  that will go into a final fairness determination: (1) the strength of the plaintiff's case;

19  (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

20  amount of the settlement; (4) the extent of discovery completed and the stage of the

21  proceedings; and (5) the experience and views of counsel. *See, e.g.*, *Ambriz*, 2015

22  WL 12683823 at *5; *Moshogiannis v. Security Consultants Grp., Inc.*, No. 10-

23  05971, 2012 WL 423860 at *5 (N.D. Cal. Feb. 8, 2012); *Gardner v. GC Servs., LP*,

24  No. 10-0997, 2011 WL 5244378 at *6 (S.D. Cal. Nov. 1, 2011). All of these factors

25  indicate that the Settlement is well within the range of reasonableness, and the Court

26  should direct notice to be issued to Class Members.

27  ///

28  ///

1.      **The Strength of Plaintiff's Case on the Merits Balanced Against the Risk, Expense, and Likely Duration of Further Litigation Weigh in Favor of the Settlement.**

The anticipated class recovery (Net Settlement Fund) under the Settlement is $1,690,978.30. Matern Decl. ¶20. Although plaintiff strongly believes in the merits of his claims, a legitimate controversy exists over them. Matern Decl. ¶37. For example, plaintiff contends that defendants failed to compensate employees for all time spent performing work before and after their shifts and during meal and rest breaks. *Id.* However, defendants assert that employees were properly paid for all hours worked, received all regular and overtime wages to which they were entitled, were provided compliant meal and rest breaks in accordance with California law, received accurate wage statements, were timely paid all wages owed to them upon separation and otherwise and were properly reimbursed for necessary business-related expenses. *Id.* Defendants would further contend that the Action is not suitable for class or representative treatment and a trial would be unmanageable. *Id.*

While plaintiff has calculated defendants' base potential exposure to be over $22 million, this estimate does not take into account the substantial risks involved in litigating the Action, including that the court may deny class certification or, in its discretion, reduce PAGA penalties; as well as the likelihood of appeals; further litigation will cause inconvenience, distraction, disruption, delay, expenditures and recovery disproportionate to the potential benefits of continued litigation; and this area of the law is constantly evolving creating uncertainty for employees. *Id.* Matern Decl. ¶¶37-38.

In contrast, because of the proposed settlement, Class Members will receive timely and certain relief and avoid the risk of an unfavorable judgment and a questionable appellate outcome. Matern Decl. ¶25. Such a result is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

In sum, when the risks of litigation, the uncertainties involved in achieving

27

class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, it is clear that the Class Settlement Amount of $2,750,000.00 is fair, adequate and reasonable. Matern Decl. ¶40. For these reasons, plaintiff and Class Counsel support the proposed Settlement as being in the best interests of the Class. *Id.*

### 2.    The Overall Recovery Is Substantial.

The $2,750,000.00 Class Settlement Amount with a Net Settlement Fund of 1,609,978.30 is substantial.

### 3.    The Stage of the Proceedings.

The stage of the litigation further supports the Settlement. MLG counsel investigated and researched plaintiff's claims, conducted discovery, received substantial payroll, timekeeping and other employment records, retained an expert who analyzed the pertinent data, attended three settlement conferences and mediation, and engaged in months of additional settlement discussions and thus is aware of the possible outcomes. Matern Decl. ¶¶11-22.  This factor weighs in favor of Settlement.

### 4.    Highly Experienced Class Counsel Supports the Settlement.

Class Counsel is highly experienced in class litigation. Matern Decl. ¶¶41-47. Class Counsel's endorsement of the Settlement as fair, reasonable, and adequate "is entitled to significant weight, and weighs in favor of settlement." *See, e.g.*, *Ambriz*, 2015 WL 12683823 at *6; *Morales v. Stevco, Inc.*, 2011 WL 5511767 at *11 (E.D. Cal. Nov. 10, 2011).

### D.    The Proposed FLSA Collective Action Settlement Warrants Judicial Approval.

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). A

bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot. U.S.A*., Inc., 2014 WL 1671489 (S.D.Cal. Apr. 28, 2014). When evaluating an FLSA settlement, courts consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Dunn v. Teachers Ins. & Annuity Assoc'n of Am.*, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (internal citations omitted).

Here, the FLSA claim is solely for unpaid minimum and overtime wages in violation of 29 U.S.C. section 201, et seq. (TAC ¶¶ 22-24,73-82) and this settlement encompasses a bona fide dispute over the existence and extent of defendants' liability. *Selk v. Pioneers Mem'l Healthcare Dist*., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are legitimate questions about the existence and extent of [the d]efendant's FLSA liability.") Specifically, plaintiff alleges that defendants owe the Settlement Class unpaid wages for off-the-clock work performed during meal periods and while entering and exiting the facility (security checks and waiting to clock in/out) and rounding time to the quarter hour. Matern Decl. ¶¶25-31. For their part, defendants argue that their meal period policies are compliant and that the employees enter and verify the accuracy of their 30-minute meal periods every day, and defendants pay meal period premiums for any missed, short of late meal periods. Matern Decl. ¶35. Defendants also maintain that employees are allowed to shut down and take off protective gear before their meal period starts, and that any purported time spent securing equipment and donning and doffing would not apply to all employees but only to those that work on the ships and even then only to a relatively few jobs which involve certain equipment and PPE like welders. Matern Decl. ¶31. Defendants further argue that employees are paid for all time worked including time spent entering and exiting the facility and that their rounding policy is neutral facially and in practice in compliance with Californian law. Matern Decl. ¶31; *See's Candy Shops, Inc. v.*

1   *Superior Court* 210 Cal.App.4th 889 (2012). While plaintiff alleged unpaid wages

2   for defendants' failure to include all compensation in the regular rate of pay for

3   purposes of determine the overtime rate, defendants argue that the employees did

4   not work much overtime and since they did not receive bonuses, the only additional

5   compensation was for per diem payments which are paid to only a small number of

6   employees and are not to be included in the regular rate. Matern Decl. ¶31; 29

7   U.S.C. § 207(e)(2), see, e.g., *Sharp v. CGG Land (U.S.), Inc.*, 840 F.3d 1211 (10th

8   Cir. 2016) (per diem not included in regular rate of pay). Of course, plaintiff rejects

9   each of these arguments but recognizes that there is a bona fide dispute as to each of

10  the alleged factual bases for the claims for unpaid minimum and overtime under the

11  FLSA.

12      The proposed settlement warrants approval under the factors used to

13  determine whether a settlement is fair and reasonable under the FLSA: "(1) the

14  plaintiff's range of possible recovery; (2) the stage of proceedings and amount of

15  discovery completed; (3) the seriousness of the litigation risks faced by the parties;

16  (4) the scope of any release provision in the settlement agreement; (5) the

17  experience and views of counsel and the opinion of participating plaintiffs; and (6)

18  the possibility of fraud or collusion." *Selk*, 159 F.Supp.3d at 1173.

19              **1.    The range of possible recovery supports approval.**

20      As the Rule 23 discussion above shows, the range of possible recovery

21  supports approval. For off-the-clock work, plaintiff estimates that assuming the

22  unpaid time spent in security checks would total $119,114 in unpaid wages. Matern

23  Decl. ¶26. If the same unpaid time is considered overtime, the total unpaid wages

24  are $176,243. Matern Decl. ¶27. For time spent working during meal periods

25  including securing tools and donning and doffing, $1,174,995 in unpaid regular

26  wages and if considered overtime wages, the amount increases to $1,762,492.

27  Matern Decl. ¶29. For rounding, plaintiff estimates $86,162 in unpaid wages.

28  Matern Decl. ¶30. In sum, the range of possible recoveries is from $1,380,271 to

$2,024,897. Matern Decl. ¶32. Compared to the gross settlement ($2,750,000), the recovery is reasonable as it represents between 50% to 73.6% of the gross settlement. It is also reasonable when compared to the estimated net recovery ($1,690,978) and even when compared to the 20% of the net recovery which is allocated to unpaid wages ($338,195), the recovery is reasonable as it represents between 17% and 20% of the range of possible recoveries not including interest. *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

**2.    The stage of proceedings and amount of discovery completed, the seriousness of the litigation risks faced by the parties.**

The stage of proceedings and amount of discovery completed and also warrant approval for the reasons discussed above with regard to Rule 23.

As described above, Plaintiff obtained sufficient data and discovery before mediation and settlement discussions in order to prepare liability and damages analyses grounded in evidence and actual time and pay records.

**3.    The scope of the release provision in the settlement agreement is limited to claims based on the factual allegations in the operative complaint and is supported by due investigation.**

Unlike release provisions that courts have found to be overly broad, see, e.g., *Garcia v. Jambox, Inc.*, No. 14–cv–3504 (MHD), 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015); *Ambrosino*, 2014 WL 1671489, at *2–3, this release provision generally tracks the wage and hour claims asserted in the lawsuit. The release does not force Settlement Class members to forfeit unrelated claims nor does it allow defendants to buy an unduly broad shield against FLSA claims in exchange for unpaid wages that Settlement Class members are indisputably entitled to by statute. The release is limited to the claims "that are or could have been alleged by Settlement Class Members against NSC and/or BAE SDSR in the operative

complaint in the Action, and any amendment(s) thereto, or in the Notice of Labor Code Violations sent to the LWDA, **based on the factual allegations contained therein** for the Class Period (January 10, 2016, through the earlier of the date of Preliminary Approval or August 8, 2021)." Agreement ¶21 (emphasis added). This language ensures the proper scope of the release and that the Settlement Class is not releasing claims unrelated to the facts in the operative complaint. "Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178.

The FLSA claims alleged in the TAC are solely for unpaid minimum and overtime wages. TAC ¶¶21-22. Following the Court's initial denial of preliminary approval, counsel for the parties met and conferred and plaintiff prepared a Third Amended Complaint which lays out the specific factual allegations which underlie the FLSA claims, e.g., off-the-clock work arising from security checks at the beginning and end of the shift, time spent donning and doffing and in security checks during meal periods, and the miscalculation of the overtime rate. TAC ¶¶23, 79, 82. Under the plain terms of the release, "these factual allegations contained therein" define the scope of the FLSA claims and ensure the release does not encompass matters which were not part of this lawsuit.

Plaintiff, by and through his counsel, undertook to determine the different types of violations. In addition to Plaintiff's experience over the course of years working at the shipyard and formal discovery produced, almost 40 current and former non-exempt employees who worked in all manner of jobs at the shipyard during the class period were interviewed.[3] Matern Decl. ¶14. These included employees that worked both on and off the ships and who could provide a

---

[3] This information is provided in response to the Court's request for information and Plaintiff does not intend waiver of the work product privilege.

comprehensive picture of shipyard operations. Matern Decl. ¶14. With this information, plaintiff was able to determine what wage and hour issues and violations were suffered by non-exempt employees at the shipyard, which resulted from widespread policies and practices and which were occasional or isolated instances. Matern Decl. ¶14. With this information, plaintiff was able to set forth the factual allegations for the claims alleged in the complaints including the TAC. This also ensures that not only does the release track the claims alleged but that no other significant claims based on other factual allegations are improperly swept up and released. See *Collins v. Cargill Meat Solutions Corp.*,274 F.R.D. 294, 303 (E.D. Cal. 2011) (finding release proper and not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants"); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (finding release proper because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.").

> **4.    The experience and views of counsel and the opinion of participating plaintiff and the possibility of fraud or collusion.**

As discussed with regard to the Rule 23 analysis, Class Counsel have substantial experience in prosecuting wage and hour claims brought on class and collective bases. Both counsel and plaintiff agree that the proposed settlement is a fair and reasonable resolution of the bona fide disputes raised in the FLSA claim. Matern Decl. ¶31. Thompson Decl. ¶3.

## IX.    THE PAGA PENALTIES SECURED BY THE SETTLEMENT ARE GENUINE AND MEANINGFUL AND FULFILL PAGA'S UNDERLYING PURPOSE TO BENEFIT THE PUBLIC

In the absence of an explicit statutory requirement, the LWDA has provided guidance, explaining that courts should evaluate settlements of PAGA claims based

on whether "'the relief provided for under the PAGA [is] genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public."
*O'Connor v. Uber Techs., Inc.,* 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). When evaluating a PAGA settlement, the court should analyze whether the amount of civil penalties obtained is "genuine and meaningful" in light of PAGA's statutory purpose.

Here, the Settlement allocates $100,000.00 to the State and allegedly aggrieved employees that is genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and thus fulfills the underlying purpose of the statute. This represents 3.6% of the Class Settlement Amount and is well within the range of amounts approved by courts in California. See *Andres v. Laboratory Corporation of America*, No. 2:13-cv-08773-GW-VBK (C.D. Cal. Nov. 3, 2015) (gross settlement fund of $520,000, of which $5,000 (or 1%) was allocated to the settlement of PAGA penalties).

## X.    THE PROPOSED NOTICE SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(c)(2)(B) requires that absent Settlement Class Members receive the "best notice that is practicable under the circumstances." The proposed Notice meets all of the notice requirements of Rule 23(b)(3). The Notice Packet explains in easily understood language what the case is about and the terms of the settlement along with  the right of Settlement Class Members to attend the final approval hearing, to opt-out or object to the Settlement, a description of the Claims being released; and the details of the final fairness hearing. Agreement, Ex. A. Settlement Class Members will have 30 days to request exclusion from or object to the Settlement. Agreement ¶¶24, 46, 52.

Using last-known addresses, the Settlement Administrator will send the notice by first class U.S. Mail to all Class Members. Agreement ¶40. The Settlement Administrator will perform skip traces or other means to obtain the correct address for notices returned as undeliverable, and shall attempt re-mailings where new

1    addresses are obtained. Agreement ¶41. For these reasons, the Settlement's plan for

2    directing notice to Class Members satisfies Rule 23(c)(2)(B). *See, e.g.*, *Wright v.*

3    *Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One*

4    *Mortg. Co.*, No. 07-0994 DOC, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

5    **XI.    CONCLUSION**

6        For the foregoing reasons, Plaintiff requests that the Court grant preliminary

7    approval of the Settlement, approve the proposed class notice, and set a final approval

8    hearing.

9    Dated: October 18, 2022             MATERN LAW GROUP, PC

10

11

12                            By:    _____

13                                   Matthew J. Matern
                                     Scott A. Brooks
14                                   Attorneys for plaintiff individually and on
                                     behalf of all others similarly situated

15

16

17

18

19

20

21

22

23

24

25

26

27

28