Matthew J. Matern (SBN 159798)
  mmatern@maternlawgroup.com
Scott A. Brooks (SBN 160115)
  sbrooks@maternlawgroup.com
MATERN LAW GROUP, PC
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266

Class Counsel and Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR THOMPSON, an individual, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NSC TECHNOLOGIES, LLC, a Virginia limited liability corporation; BAE SYSTEMS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 20-CV-371-JO(MSB)<br><br>Class Action<br><br>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:  March 29, 2023<br>Time: 9:30 a.m.<br>Courtroom: 4C |

Comes now plaintiff Arthur Thompson, individually and on behalf of the certified class, and moves the Court for an order:

1. Granting final approval of the proposed class action settlement set forth in the Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement" or "Settlement") (Dkt. 74-1, pp. 24-57);

2. Find that the Notice of Class Action Settlement ("Class Notice") distributed to Class Members pursuant to the Court's order granting preliminary approval constituted the best notice practicable under the circumstances to all Class Members;

3. Finally certifying the Class for settlement purposes only;

4. Directing that compensation to the Participating Settlement Class Members be effected pursuant to the terms of the Agreement;

5. Approving the payment to the California Labor Workforce Development Agency in the amount of $75,000.00;

6. Approving the Settlement Administrator's costs in the amount of $15,000.00;

7. Approving an award of attorneys fees and costs and an enhancement award; and

8. Entering final judgment in the action.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable, and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declarations of Matthew J. Matern and Jarrod Salinas and all exhibits thereto, including the Settlement Agreement, all documents and records on

///

///

file in this matter, and such additional argument, authorities, evidence and other matters as may be presented by the parties hereafter.

Dated: March 26, 2023    MATERN LAW GROUP, PC

By: _____
Matthew J. Matern
Scott A. Brooks
Class Counsel and Attorneys for plaintiff
Arthur Thompson

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………5

MEMORANDUM OF POINTS AND AUTHORITIES……………..………..7

**I.**   INTRODUCTION……………………………………………………….....7

**II.**  SUMMARY OF SETTLEMENT TERMS……………….…………….8

**III.** ARGUMENT………………………………………………………………9

    A.   The Settlement Merits Final Approval………………….………..9

        1. The Settlement is the Product of Arms' Length Negotiations, Free of Collusion, and Achieved After Multiple Settlement Proceedings……………..….……11

        2. The Risk, Expense, Complexity and Likely Duration of Further Litigation………………………………….…….12

        3. The Risk of Maintaining Class Action Status……….……...14

        4. The Amount Offered in Settlement……………...……..…15

        5. The Extent of Discovery Completed and the Stage of the Proceedings………………………………….……16

        6. The Experience and Views of Counsel……………….……17

        7. The Reaction of Class Members to the Settlement…………17

**IV.**  CONCLUSION……………………………………………………………..18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...... 10

*Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. 2010) .............. 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 101l (9th Cir. 1998) ......................................... 10

*In re Cedant Corp., Derivative Action Litigation*, 232 F. Supp.2d 327 (D. N.J. 2002)
 ................................................................................................................................. 15

*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007)
 ................................................................................................................................. 16

*In re Lifelock, Inc. Marketing and Sales Practices Litigation*,
  2010 WL 3715138 (D. Ariz. 2010) ...................................................................... 18

*In re Portal Software Secs. Litig.*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ... 13

*In re Synocor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ............................................................................... 11

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .............................................. 17

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................... 15

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997) ............ 16

*Mersnick v. US Protect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396
  (N.D. Cal. Dec. 18, 2006) ...................................................................................... 13

*Nat'l Rural Telecommons. Coop v. DirectTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)
 ................................................................................................................................. 14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................... 10, 15

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) ...................... 18

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............. 10, 15, 17

*Staton v. Boeing Co.*, 327 F. 938 (9th Cir. 2003) .................................................. 9, 10

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ................ 17

*West v. Circle K. Stores, Inc.,* 2006 U.S. Dist. LEXIS 767558 (E.D. Cal. 2006) ..... 17

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................... 8,9

# MEMORANDUM OF POINTS AND AUTHORITIES

## II. INTRODUCTION

On December 6, 2022, this Court granted preliminary approval of the proposed class action settlement between Arthur Thompson ("Plaintiff") and defendants NSC Technologies, LLC and BAE Systems San Diego Ship Repair Inc. ("Defendants"). Dkt. 80. Pursuant to the Settlement, Defendants are required to pay a total of $2,853,572.00 on a non-reversionary basis in exchange for a release of certain claims. See Stipulation of Class Action Settlement and Release ("Settlement" or "Agreement"). Dkt. 74-1, p. 6, ¶8, pp. 28-29, ¶21, p. 31, ¶ 31. This total amount is an increase over the $2,750,000.00 Class Settlement Amount at preliminary approval. The increase is due to an escalator clause in the Settlement which was triggered by an increase in the number of actual work weeks in the settlement class period.

On December 23, 2022, the Court-appointed Settlement Administrator mailed the Court-approved Class Notice to 1,746 Settlement Class Members. See Declaration Of Jarrod Salinas With Respect To Notice And Settlement Administration ("Salinas Decl.") at p. 3, ¶5; Legal Notice, Exhibit A to Salinas Decl. The Settlement Class Members were advised that they could submit a request to opt-out from the Settlement or object to the Settlement by no later than January 23, 2023. *Id.* at p. 2, ¶ 2; p. 3, ¶5; Exhibit A. Of the Notice Packets mailed, zero were returned as undeliverable, and one notice was requested. *Id.* at p. 3, ¶¶8-9. As of January 23, 2023 (the response postmark deadline), the Settlement Administrator received one valid request for exclusion, zero disputes, and no objections. *Id.* at p. 3, ¶¶8-11.

Under the Settlement, the entirety of the net settlement proceeds will be distributed automatically to all Settlement Class Members who did not request exclusion from the Settlement. Dkt. 74-1, p. 6, ¶8, pp. 28-29, ¶21. The average settlement amount for each Settlement Class Member is approximately $982.67 and

the highest individual settlement payment is estimated to be approximately $5,759.90. Salinas Decl., at p. 4, ¶15.

Plaintiff now moves under Federal Rule of Civil Procedure 23(e) and (h) for final approval of the Settlement. As set forth below, the Settlement is fair, adequate and reasonable. The settlement was reached after multiple settlement conferences with the Court and with the facilitation of a neutral mediator, Deborah Saxe, Esq., and was the result of arms' length negotiation between adversaries, free of collusion. Plaintiff therefore respectfully requests that the Court grant final approval to the Settlement, as already "preliminarily approved" by the Court's December 6, 2022 order. Dkt. 80.

## II.   SUMMARY OF SETTLEMENT TERMS

The material terms of the Settlement are as follows:

- The Settlement Class is comprised all individuals employed by NSC Technologies., Inc. and placed to work at the BAE Systems San Diego Ship Repair facility at 2205 E. Belt Street in San Diego, California, as hourly non-exempt employees between January 10, 2016, and August 8, 2021. Settlement Agreement, ¶¶6, 27 (Dkt. 74-1, pp. 26, 30-31).
- Defendant will pay a non-reversionary Class Settlement Amount (or "CSA") of Two Million Eight Hundred Fifty Three Thousand Five Hundred Seventy Two  Dollars of $2,853,572.00 in exchange for a release of the Class Members' claims asserted in the Third Amended Complaint, through August 8, 2021, with no claim form required. Settlement Agreement, ¶¶ 14, 48 (Dkt. 74-1, pp. 27, 36-37).
- After deducting from the CSA the Court-approved attorneys' fees and costs for Class Counsel, a payment for the Settlement Administrator's fees and expenses, payment to the State of California Labor and Workforce Development Agency ("LWDA"), the employer's portion of FICA, and all other state and federal payroll taxes, and a Court-approved service payment to

the Class Representative, the entirety of the remaining funds (the "Net Settlement Amount") shall automatically be distributed to the payment-eligible Settlement Class Members. Settlement Agreement, ¶¶36, 54 (Dkt. 74-1, pp. 33-34, 39). Settlement Class Members will receive a payment based on each person's number of work weeks, using the following formula: the Net Settlement Amount will be apportioned to each Settlement Class Member based on their proportionate number of work weeks, by multiplying the Net Settlement Amount by a fraction, the numerator of which is the Settlement Class Member's individual total work weeks, and the denominator of which is the total number of work weeks of all Settlement Class Members. *Id.* at ¶36(a) (Dkt. 74-1, p. 33). If a Settlement Class Member does not cash the check for their settlement payment within 120 days after it is mailed to the Class Member, the Settlement Administrator will escheat the check to the Controller of the State of California. *Id.* at ¶56 (Dkt. 74-1, pp. 39-40).

### III. ARGUMENT

#### A. The Settlement Merits Final Approval.

Pursuant to Federal Rules of Civil Procedure, Rule 23(e), "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). In order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(l)(c); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). In deciding whether to grant final approval of a class action settlement, courts must "balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to

the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton*, 327 F.3d at 959. Courts also consider the arm's length nature of the settlement negotiations in their analysis. *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014).

The Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair and "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 622 (S.D.Cal.2005) ("It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance.").[1] In considering whether to grant final

---

[1] See also *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 618, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

approval of a class action settlement, the Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

### 1. The Settlement is the Product of Arms' Length Negotiations, Free of Collusion, and Achieved After Multiple Settlement Proceedings.

Given the settlement efforts in this case ranging from the early neutral evaluations conferences ("ENE") with Magistrate Judge Michael S. Berg and an unsuccessful mediation, there is ample basis to conclude that the settlement was the result of good faith, arms-length negotiations between experienced and informed counsel.

In preparation for the second ENE on August 26, 2020, Defendants provided a 15% sampling of time and payroll data and policy documents for the period from October 31, 2017 through April 30, 2020. Matern Decl. at ¶13. Plaintiff retained an expert statistician who reviewed and analyzed defendants' time and payroll records and prepared an analysis which was instrumental in creating a damages model for settlement discussions. *Id.*

When negotiations did not resolve the case, Plaintiff propounded over 80 document requests and 20 interrogatories on both defendants and a request to inspect and enter onto defendants' property, three witness deposition notices, including two persons most knowledgeable containing 30 subject categories. Matern Decl. at ¶14. Plaintiff responded to defendants' 25 document requests, produced responsive documents and sat for a full-day deposition. Matern Decl. at ¶14.

During this period and before entering into the settlement, more than 40 current and former employees, who worked at myriad positions at times between 2013 and the end of the class period (August 8, 2021), were interviewed about the operations of the shipyard. Matern Decl. at ¶15. Together these 40+ employees

could provide a wealth of information regarding shipyard operations both on and off-ship including hours, time keeping, wages, security checks, meal and rest periods, clothing, equipment, etc. from this spectrum of jobs throughout the shipyard over the course of the entire class period. *Id.*

As more particularly detailed in the submissions in support of preliminary approval (Dkt. 74-1, ¶¶21-36, pp. 6-14), Plaintiff was able to put together a thorough and detailed analysis of each claim and potential damages and penalties. Matern Decl. at ¶¶13-16. This included rest period violations, meal period violations, unpaid minimum and overtime wages under California law and the Fair Labor Standards Act, off-the-clock work, rounding, waiting time penalties, wage statement violations, unreimbursed business expenses, and penalties for violations of the Private Attorneys General Act. Matern Decl. at ¶¶26-42.

Months later, on February 23, 2021, after formal discovery had been conducted, the Parties participated in a full day mediation with mediator Deborah Saxe. Matern Decl. at ¶18. Still the Action did not resolve however, Ms. Saxe continued facilitating negotiations between the Parties and on June 9, 2021, nearly four months later, the parties came to terms of the settlement now before the Court. Matern Decl. at ¶18

### 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation.

Defendants vigorously litigated the case and expressed every intention of continuing their defense through class certification, trial, and appeal. Matern Decl. ¶41. The potential defenses to certification, liability and damages posed real and substantial issues which would not be easily overcome. *Id.* For example, Defendants' timekeeping system required that each employee input an affirmation on a daily basis that they were provided meal periods and rest breaks and that the meal period times they input were accurate, and if a compliant meal period or rest break was not provided, they knew to report it. *Id.* Defendants would argue the

affirmations would pose a hurdle not only to liability but to certification as Defendants would be expected that to challenge the affirmations would create individual questions. *Id.*

Off-the-clock work posed other obstacles including that time spent donning and doffing may require representative evidence, and Defendants would surely argue walking time to and from breaks and meal periods, and time spent in security and bag checks involved individual evidence. By its very nature, representative evidence may provide a platform for moving for decertification and attacks on manageability. Defendant also raised that employees performed work on federal enclaves where California wage and hour laws do not apply. Where, as Defendant would be expected to urge, employees were assigned to different ships and different locations, the amount of time an employee spent on a federal enclave might vary from employee to employee, and week to week. Defendant would be expected to argue this presented substantial class certification as well as merits issues. See *Mersnick v. US Protect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396, at *7-8 (N.D. Cal. Dec. 18, 2006) (holding that plaintiff's claims for certain California Labor Code violations, including alleged meal and rest break violations and "off-the-clock" work without pay, were barred under the Federal Enclave Doctrine).

In sum, critical aspects of the core claims would have been put at issue and Defendants would surely contest liability in addition to arguing that the Action is not suitable for class or representative treatment and a trial would be unmanageable. *Id.* Even if successful at certification and trial, Plaintiff and the Class Members would face the likelihood of appeals; further litigation will cause inconvenience, distraction, disruption, delay, expenditures and recovery disproportionate to the potential benefits of continued litigation; and this area of the law is constantly evolving creating uncertainty for employees. *Id.; see In re Portal Software Secs. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of

proceeding to summary judgment, trial and appeal also support the settlement."); *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010) ("[L]iability and damages issues-and the outcome of any appeals that would likely follow if the Class were successful at trial-present substantial risks and delays for Class member recovery.").

Based on the foregoing arguments and others presented at mediation, there would have been significant hurdles both as to class certification and on the merits. Thus, in the absence of settlement, there was a realistic possibility that class members would have recovered absolutely nothing. Defendants thus discounted the value of the claims and Class Counsel weighed this risk in determining that the settlement terms were in the Settlement Class Members' best interests. The difficulty of predicting whether Plaintiff or Defendant would ultimately have prevailed and the risk and litigation costs to all parties associated with that uncertainty made early resolution reasonable and strongly supports approval of the Settlement in this case. The prospect of "lengthy and expensive litigation with uncertain results" clearly supports settlement. See, *Nat'l Rural Telecommons. Coop v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### 3. The Risk of Maintaining Class Action Status.

Although Defendants have not objected to class certification for the purposes of settlement, Plaintiff faced the substantial risk of an adverse result to a contested motion for class certification, which would have resulted in class members recovering absolutely nothing. When it comes to class certification, district courts have wide discretion and it remained to be seen how the Court would have ruled on Plaintiff's class certification motion. In the absence of settlement, Plaintiff ran the risk that a contested motion for class certification would have been. Moreover, even if class certification had been granted, Plaintiff still ran the risk of subsequent decertification given the demonstrated disparities among workers according to the data presented at mediation. The significant risk of certification denial, or the later

grant of decertification, weighs further in favor of settlement here. *Rodriguez, supra,* 563 F.3d at p. 966.

### 4. The Amount Offered in Settlement.

The Settlement reflects recovery by Plaintiff equal to approximately 18.79% of the maximum potential estimated value of all of his underlying California Labor Code claims, assuming 100% liability, not including the base PAGA penalties. Matern Decl. ¶42. This maximum potential exposure analysis, although conservative, was based on numerous premises favoring the Class including the 100% liability. *Id*. Thus, a more realistic assessment of class-wide damages, even assuming class certification and a finding of liability, would have been a fraction of the "soaking wet" evaluation. *Id*. Further discounting for these risks is necessary as well. The settlement value achieved for the Settlement Class here easily satisfies the requirements for a "fair" compromise well within the range of reasonable outcomes that merits final approval. See, e.g., *In re Cedant Corp., Derivative Action Litigation*, 232 F. Supp.2d 327 (D. N.J. 2002) (approving settlement, which provided 2% value compared to maximum possible recovery).

As the Ninth Circuit has noted, "It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at p. 625 (emphasis in original). Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id*. at p. 624 (citations omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is...inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The proposed settlement offers a substantial recovery to Class Members given

the risks of pursuing this case through trial. The settlement provides a gross settlement amount of $2,853,572 with an estimated Net Settlement Fund amount of $1,683,308.09 available to the 1,745 Class Members, with no amount reverting to Defendants. Each Participating Class Member will receive a proportionate share of the settlement based on their work for NSC during the Class Period. This is a significant recovery based on the risks of obtaining and maintaining class certification and establishing liability and damages at trial on the claims set forth in the Complaint.

Accordingly, this factor favors final approval of the settlement.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings.

Approval of a class action settlement does not require that discovery be exhaustive or that the parties engage in formal discovery procedures. See, e.g., *In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties "a clear view of the strength and weaknesses of their cases"). The fact that a settlement results from arms' length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064 at *5 (N.D. Cal. 1997). Moreover, early settlement is encouraged as a matter of public policy, particularly in the Southern District of California, where U.S. District Court for the Southern District of California Local Civil Rule 16.1(c)(1) requires ENEs to proceed swiftly, as the parties did twice in this matter.

Here, Class Counsel conducted extensive investigation, interviews, research, informal and formal discovery in this case. Defendant provided data and materials, including the production of over 70,000 rows of data for over 19,000 shifts, almost 4,500 pay periods which were analyzed by Plaintiff's counsel with the assistance of an expert statistician; wage data; and multiple written employee handbooks and policies. Matern Decl. at ¶13. This data and analysis formed much of the basis for

the settlement negotiations. *Id.* This settlement is therefore the product of arms' length negotiation between well-informed, knowledgeable counsel, zealously advocating for their respective clients with the assistance of a neutral mediator.

### 6. The Experience and Views of Counsel.

The opinions of experienced class counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.,* 2006 U.S. Dist. LEXIS 767558, *17-18 (E.D. Cal. 2006). See also *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (courts should give great weight to counsel's recommendations). Class Counsel has substantial experience litigating class actions in general and wage and hour class actions in particular, as does Defense counsel.

The opinions of Counsel that the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members because of the risks of continued litigation, weighs strongly in favor of final approval. Here, as previously found by the Court, counsel for the parties had a thorough understanding of the merits and issues of the case. Counsels' extensive experience with similarly complex class actions further shows that the Court should defer to Counsel's settlement recommendation here. See *Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.") (citations omitted); see also *Lane v. Facebook, Inc.*, 696 F.3d 811, 821-822 (9th Cir. 2012) ("[T]he district court properly declined to undermine [the parties'] negotiations by second-guessing the parties' decision as part of its fairness review over the settlement agreement."); *Vasquez*, 266 F.R.D. at 490 ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

### 7. The Reaction of Class Members to the Settlement.

Of 1,746 noticed Class Members, only one opted out and there were no objections and no disputes. Salinas Decl. ¶¶6-11. The reaction of the Class Members

is therefore clear. This overwhelmingly positive response to the Settlement strongly supports final approval. *Reynolds v. National Football League*, 584 F.2d 280, 281 (8th Cir. 1978) (16 objectors out of 5,706 class members provided strong evidence of no significant dissatisfaction with settlement); *In re Lifelock, Inc. Marketing and Sales Practices Litigation*, 2010 WL 3715138 at *6 (D. Ariz. 2010) (relatively few objections and requests for exclusion support approval).

Therefore, after conducting the relevant evaluation of the factors, the Court can conclude reasonably that the Settlement is fair, reasonable, and adequate and therefore warrants final approval.

## IV.  CONCLUSION

The Parties negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated: March 26, 2023                MATERN LAW GROUP, PC

By: _____
Matthew J. Matern
Scott A. Brooks
Class Counsel and Attorneys for plaintiff