# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR THOMPSON, an individual, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NSC TECHNOLOGIES, LLC, a Virginia limited liability corporation; BAE SYSTEMS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:20-CV-00371-JO-MSB<br><br>[~~PROPOSED~~] **ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

1

CASE NO. 3:20-CV-00371-JO-MSB
[~~PROPOSED~~] ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1 **[PROPOSED] ORDER**

2     Plaintiff Arthur Thompson's ("Plaintiff") Motion for Final Approval of Class
3 Action Settlement and Motion for Attorneys' Fees and Costs came on regularly for
4 hearing on March 29, 2023 at 9:30 a.m. before the Honorable Jinsook Ohta, district
5 judge presiding. The Court, having considered Plaintiff's motions, the Declarations
6 of Class and Plaintiff's counsel Matthew J. Matern and Jarrod Salinas of Phoenix
7 Settlement Administrators, and all exhibits thereto, including the Stipulation of
8 Class Action Settlement and Release ("Stipulation").

9     Plaintiff Arthur Thompson ("Plaintiff") was represented by his counsel, the
10 Matern Law Group, PC. Defendants NSC Technologies ("NSC") and BAE Systems
11 San Diego Ship Repair Inc. ("BAE SDSR") (collectively, "Defendants") were
12 represented by their counsel, DLA Piper LLP (U.S.).

13     For good cause appearing, the Court HEREBY ORDERS AS FOLLOWS:

14 **I.    Introduction**

15     On January 10, 2020, Arthur Thompson ("Thompson") brought this putative
16 class action on behalf of himself and "all current and former non-exempt employees
17 of DEFENDANTS in the State of California at any time within the period beginning
18 four (4) years prior to the filing of this action and ending at the time this action
19 settles or proceeds to final judgment…." Complaint, Dkt. 1-2, ¶ 5.

20     The Third Amended Complaint (the "TAC" (Dkt. 78)), which is the operative
21 one, advances the following causes of action:

22     1. Failure to provide required meal periods, in violation of California
23         Labor Code ("Cal. Lab. Code") §§ 226.7, 510, 512, 1194, 1197;
24         Industrial Welfare Commission ("IWC") Wage Order Nos. 1-2001 and
25         9-2001, § 11;
26     2. Failure to provide required rest periods, in violation of Cal. Labor Code
27         §§ 226.7, 512; IWC Wage Order Nos. 1-2001 and 9-2001, § 12;

28

3. Failure to pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, 1198; IWC Wage Order Nos. 1-2001 and 9-2001, § 3;
4. Failure to pay minimum wages in violation of Cal Labor Code §§ 1194, 1197; IWC Wage Order Nos. 1-2001 and 9-2001, § 4;
5. Failure to pay all wages due to discharged and quitting employees in violation of Cal. Lab. Code §§ 201, 202 and 203;
6. Failure to maintain required records in violation of Cal. Labor Code §§ 226, 1174; IWC Wage Order Nos. 1-2001 and 9-2001, § 7;
7. Failure to furnish accurate itemized wage statements in violation of Cal. Labor Code §§ 226, 1174; IWC Wage Order Nos. 1-2001 and 9-2001, § 7;
8. Failure to indemnify employees for necessary expenditures incurred in discharge of duties in violation of Cal. Labor Code § 2802;
9. Unfair and Unlawful Business Practices in violation of Cal. Bus. & Prof. Code §§ 17200 et. seq.;
10. Failure to pay straight and overtime wages, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq.;
11. Representative action for civil penalties under Cal. Lab. Code §§ 2698–2699.5.

TAC ¶¶30-92.

On October 21, 2021, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion" (Dkt. 58)). On February 2, 2022, that motion was denied without prejudice to allow further briefing to address the Court's concerns, e.g., regarding factual support for the scope of the release (Dkt. 71). On October 25, 2022, Plaintiff filed a renewed Preliminary Approval Motion addressing the Court's concern, and also moved for leave to file the TAC. Dkt. 73, 74. On December 6, 2022, the renewed Preliminary Approval

1  Motion was granted (the "Preliminary Approval Order" (Dkt. 80)). The Preliminary
2  Approval Order is incorporated here by this reference.
3       On March 26, 2023, Plaintiff filed a Motion for Final Approval of Class
4  Action Settlement (the "Final Approval Motion" (Dkt. 83)). On March 28, 2023,
5  Plaintiff filed a Motion for Attorneys' Fees and Costs and Enhancement Award (the
6  "Attorneys' Fees Motion" (Dkt. 84)). No opposition to either of these motions was
7  filed.
8       On March 29, 2023, a hearing was held on the Final Approval Motion and the
9  Attorneys' Fees Motion. Dkt. 85. At the hearing, the parties were directed to file a
10 proposed order forthwith. *Id.*
11      For the reasons stated in this Order, the Final Approval Motion and the
12 Attorneys' Fees Motion are GRANTED.
13 **II.    Summary of Settlement Agreement and Notice**
14      Capitalized terms used in this Order that are not otherwise defined herein
15 shall have the meaning assigned to them in the Settlement Agreement.
16      A.    Class Definition:
17      The Settlement Agreement defines the "Class" or "Class Members" as "all
18 individuals employed by NSC and placed to work at the BAE Systems San Diego
19 Ship Repair Inc. facility at 2205 E. Belt Street in San Diego, California ("BAE
20 SDSR"), as hourly non-exempt employees between January 10, 2016, and the earlier
21 of the date of Preliminary Approval or August 8, 2021." Settlement Agreement, Dkt.
22 74-1 at ¶¶6, 27. This period of January 10, 2016, and the earlier of the date of
23 Preliminary Approval or August 8, 2021 is defined as the "Class Period." *Id.* ¶ 6.
24      The Class includes 1,745 persons, and the Class Period includes 73,650
25 workweeks. Declaration Of Jarrod Salinas With Respect To Notice And Settlement
26 Administration ("Salinas Decl."). Dkt. ¶ 83-2,¶¶12-13.
27      B.    Summary of the Settlement Agreement
28

Case 3:20-cv-00371-JO-MSB   Document 86   Filed 03/30/23   PageID.1065   Page 5 of 16

The monetary terms of the Settlement Agreement are summarized in the following table:

| Description of Amount | Amount |
|---|---|
| Class Settlement Amount | $2,853,572.09 |
| Est. Class Counsel Fees | ($951,190.70) |
| Est. Class Counsel Costs | ($39,415.78) |
| Class Rep Award: | ($15,000.00) |
| PAGA Payment/LWDA | ($100,000.00) |
| Phoenix Admin. Fees | ($15,000.00) |
| Employer Taxes | ($49,657.52) |
| **Net Settlement Fund (not including 25% of PAGA payments)** | **$1,683,308.09** |

C.   Settlement Administration and Final Requested Amounts

The Settlement Agreement provides for the allocation of up to $15,000 for the cost of settlement administration. Settlement Agreement ¶ 25. The Settlement Agreement identifies Phoenix Settlement Administrators ("Phoenix") as the Third Party Administrator. *Id.* ¶ 26. Plaintiff seeks final approval of $15,000 to Phoenix for settlement administration expenses. *Id.*, ¶ 25; see also Salinas Decl., Dkt. ¶ 83-2, ¶18.

The Settlement Agreement provides for an enhancement award to Plaintiff Arthur Thompson of up to $15,000. Settlement Agreement ¶ 33. In the Final Approval Motion and the Attorneys' Fees Motion, Plaintiff requests approval of that amount. Dkt. 84 at 19-22.

A PAGA Payment of $100,000 was deemed reasonable in the Preliminary Approval Order, with $75,000 allocated to the Labor and Workforce Development Agency ("LDWA") and $25,000 divided among Class Members who do not opt out

1  ("Participating Class Members"). Dkt. 80 at 2. Plaintiff requests approval of those
2  amounts. Dkt. 83 at 2, 8.
3        An award of attorney's fees to Plaintiffs' counsel of $916,666.67 was deemed
4  reasonable in the Preliminary Approval Order. Dkt. 80 at 2. Pursuant to the
5  Settlement, the Class Settlement Amount increased to a total of $2,853,572.00 over
6  the $2,750,000.00 Class Settlement Amount at preliminary approval due to an
7  escalator clause in the Settlement Agreement which was triggered by an increase in
8  the number of actual work weeks in the settlement class period. Dkt. 74-1, p. 6, ¶8,
9  pp. 28-29, ¶21, p. 31, ¶ 31. This increase in the Class Settlement Amount in turn
10 increased the amount of available attorneys' fees by to a total of $951,190.66 (i.e.,
11 33.33% of the Class Settlement Amount of $2,853,572.00) and Plaintiff's counsel
12 request approval of that amount. Dkt. 84 at 11. Plaintiffs' counsel request approval
13 of costs of $39,415.78. Dkt. 84 at 19.

      D.    Notice to Class Members

15       Timely notice to Class Members of the settlement was provided by the Third
16 Party Administrator. Salinas Decl., Dkt. 83-2 ¶¶ 5-12. On December 15, 2022,
17 counsel for Defendants provided the Third Party Administrator with a mailing list
18 that included the names, last known address, Social Security Number, and pertinent
19 employment information of each Class Member (the "Class List"). *Id*. ¶ 3. On
20 December 23, 2022, after updating the mailing addresses of the Class List, the Third
21 Party Administrator mailed the court-approved notice (the "Class Notice") to all
22 1,745 Class Members on the Class List. *Id*. ¶¶ 4-5. Class Members were advised that
23 the postmark deadline for objecting, opting out or disputing one's employment
24 information was January 23, 2023. *Id*. ¶ 10; Class Notice, Exhibit A to Salinas
25 Decl., at 7.
26       The Class Notice provided a streamlined explanation of the Settlement
27 Agreement, explained why it was being sent, detailed the history of the action and
28

the claims that had been advanced, summarized the financial terms of the Settlement, and explained what rights Class Members who participated in the Settlement would release. Class Notice, Exhibit A to Salinas Decl., at 7-11. The Class Notice also stated that, if in response to the Class Notice, a Class Member elected to take no action, that person would remain in the Class. Alternatively, the person could affirmatively elect to opt out of the settlement or submit an objection to it. *Id*. The Court finds and determines that the Class Notice provided was the best notice practicable, which satisfied the requirements of law and due process.

The Class Notice was sent by first-class mail. Salinas Decl., Dkt. 83-2 ¶ 5. No Class Notice was returned as undeliverable and one Class Member contact the Third Party Administrator to request a notice, which was provided. *Id.* ¶¶ 7-8. Therefore, all (100%) Class Members received notice of the settlement.

### III. Analysis

#### A. Class Certification

The Preliminary Approval Order analyzed whether conditioned certification of the Settlement Class was appropriate. Dkt. 80. This analysis, which has already been incorporated by the earlier reference, resulted in granting the Preliminary Approval Motion. The analysis of these factors and the resulting outcome have not changed. Therefore, the Final Approval Motion is GRANTED as to certification of the Settlement Class for settlement purposes only.

#### B. Final Approval of the Settlement Agreement

##### 1. Legal Standards

Rule 23(e) requires a two-step process in considering whether to approve the settlement of a class action. Fed. R. Civ. P. 23(e).

First, in the preliminary approval process, a court must make a preliminary determination as to whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 386 (C.D.

Cal. 2007) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003)). At this stage, "the settlement need only be potentially fair." *Id.*

Second, if preliminary approval is granted, class members are notified and invited to make any objections. Upon reviewing the results of that notification, a court makes a final determination as to whether an agreement is "fundamentally fair, adequate, and reasonable." See *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.,* 696 F.3d 811, 818-19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors, which originally were described in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), are among those that may be considered during both the preliminary and final approval processes:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the amount offered in settlement;
(4) the extent of discovery completed and the stage of the proceedings;
(5) the experience and views of counsel;
(6) any evidence of collusion between the parties; and
(7) the reaction of the class members to the proposed settlement.

See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether

preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. *Acosta*, 243 F.R.D. at 386.

    The recently amended Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment;

        and

        (iv)    any agreement required to be identified under Rule 23(e)(3);[4]

        and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

    The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. See Advisory Committee Comments to 2018 Amendments to Rule 23, Subdivision (e)(2). As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits

9

CASE NO. 3:20-CV-00371-JO-MSB
[PROPOSED] ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. *Id.*

### 2. Application

In granting preliminary approval, the Court analyzed many of the relevant factors. None of the facts and circumstances as to any of them has changed since that time. However, because the Third Party Administrator has completed the notice process, the reaction of Class Members to the Settlement Agreement may now be considered in evaluating whether it is fair and appropriate.

Of the 1,745 Class Members who received notice of the Settlement Agreement, only one opted out, and none objected. Salinas Decl., Dkt. 83-2 ¶ 9-10. The one opt out represents less than a fraction of a percent of the Class Members. A low proportion of opt-outs and objections "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (collecting cases); see also *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Therefore, this factor weighs in favor of final approval.

Because there have been no material changes in any of the relevant circumstances since the Preliminary Approval Order, the same determinations are warranted at this time with respect to the fairness analysis. The Settlement is hereby approved as fair, reasonable, and adequate and in the best interests of the Settlement Class Members. Therefore, the distribution of the Gross Settlement Fund in the manner set forth in the Preliminary Approval Order is approved subject to the terms of this Order.

10

CASE NO. 3:20-CV-00371-JO-MSB
[~~PROPOSED~~] ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

C. Incentive Award

1. Legal Standards

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

1) The risk to the class representative in commencing suit, both financial and otherwise;
2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

2. Application

The named Plaintiff Thompson renews his request for an incentive award of no more than $15,000. Dkt. 84 at 21. In support of the request, Thompson states that he spent approximately 60 hours on the case. Declaration Of Arthur Thompson In Support Of Plaintiff's Motion For Preliminary Approval Of Class Action Settlement ("Thompson Decl."), Dkt. 58-2. Because there has been no material change in circumstances since the Preliminary Approval Motion, incentive award of $15,000 to Plaintiff remain fair and reasonable. For the purposes of this Final Approval Order and this Settlement only, in light of the work performed and the hours worked, and the risks of adverse employment effects that may be associated with serving as a representative of a class, and the broader scope of release given to Defendants by the named Plaintiff, an incentive award of $15,000 is approved.

D. PAGA Payment

The LWDA has explained that:

1 |       [W]hen a PAGA claim is settled, the relief provided for under the
2 |       PAGA [must] be genuine and meaningful, consistent with the
3 |       underlying purpose of the statute to benefit the public and, in the
4 |       context of a class action, the court evaluate whether the settlement
5 |       meets the standards of being 'fundamentally fair, reasonable, and
6 |       adequate' with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting comments submitted by LWDA).

      The Settlement Agreement provides for a PAGA Payment of $100,000, with $75,000 paid to the LDWA and the remaining $25,000 divided among the Settlement Class Members. Settlement Agreement ¶ 35. For the purposes of this Final Approval Order and this Settlement only and as determined at preliminary approval, this proposed allocation is sufficient and reasonable and the Court hereby approves this PAGA Payment to resolve all claims for civil penalties under the PAGA for any violation of the California Labor Code alleged in the Action. The Court finds that the notice of the Settlement Agreement to the Labor Workforce Development Agency was sufficient and valid pursuant to California Labor Code section 2699(*l*). The LWDA has not filed any document related to this matter with the Court. ,

    E.    Fee and Cost Award

        1.    Legal Standards

      Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods.Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.* "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits

12

CASE NO. 3:20-CV-00371-JO-MSB
[~~PROPOSED~~] ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1  provisions, in the form of lower monetary payments to class members or less
2  injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327
3  F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the
4  agreement were not unreasonably high, so as to ensure that the class members'
5  interests were not compromised in favor of those of class counsel." *Id.* at 965.

6          2.     Application

7      Class Counsel request an attorney's fees award of $951,190.66 and costs under
8  California Labor Code sections 1194, 2802 and 2699, Code of Civil Procedure section
9  1021.5, the Settlement Agreement (Dkt. 74-1 ¶¶2, 32) and the common fund doctrine.
10 See, e.g., *Serrano v. Priest*, 20 Cal.3d 25, 34 (1977) (internal citations omitted);
11 *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 506 (2016) (approving fee equal to
12 33.33% of the common fund). As provided herein, the requested attorneys' fees in the
13 amount of $951,190.66 (i.e., 33.33% of the Class Settlement Amount of
14 $2,853,572.00), is reasonable. The amount of fees requested is more than the amount
15 set forth at preliminary approval for, as Plaintiff explains, this increase is due to an
16 increase in the Class Settlement Amount and so is consequent to additional benefits
17 obtained for the class. Dkt. 84 at 8. This allocation exceeds the 25% "benchmark
18 award" in the Ninth Circuit. Class Counsel argue that the adjustment upward from the
19 benchmark is warranted in light of the results achieved, the effort expended by
20 counsel, counsels' skill and experience, the complexity of the issues, the risks of
21 litigation, and the reaction of the class.

22     Based on an analysis of these factors, the upward departure from the benchmark
23 is not unreasonable and is warranted. Counsel assumed substantial risks in proceeding
24 on a contingency fee basis. They obtained substantial relief for the Class Members.
25 Further, attorneys' fees of one-third of the total recovery have been approved in
26 similar cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047-48 (9th Cir. 2002);
27 see also, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th
28

Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995).

For the purposes of this Final Approval Order and this Settlement only, the request for attorneys' fees in the amount of $ 951,190.66 is therefore GRANTED.

F.  Litigation Costs

Class Counsel request reimbursement for litigation costs of $39,415.78. Dkt. 84 at 19. For the purposes of this Final Approval Order and this Settlement only, because the costs that have been incurred remain reasonable, an award of litigation costs of $39,415.78 is GRANTED.

G.  Settlement Administrator

For purposes of this Final Approval Order and this settlement only, the Court hereby confirms the appointment of Phoenix Settlement Administrators ("Phoenix") as the Settlement Administrator to administer the Settlement as more specifically set forth in the Settlement Agreement, and further finally approves Settlement Administration Costs as fair and reasonable in the amount of Fifteen Thousand Dollars ($15,000).  The Court hereby orders the Settlement Administrator to distribute the Settlement Class Member payments in accordance with the provisions of this Order and the Settlement Agreement.

H.  Release

As of the Effective Date, Plaintiff, on behalf of himself, the State of California and aggrieved employees—and each of the Participating Class Members shall be deemed to have released the Released Parties from all Released Claims, as defined in the Settlement Agreement, for the Class Period, which is defined as January 10, 2016 through August 8, 2021.  All Settlement Class Members, as of the Effective Date, are hereby forever barred and enjoined from prosecuting the Released Claims against the Released Parties.

The terms of the Settlement Agreement, and this Final Approval Order, are

1   binding on Plaintiff, the State of California, Settlement Class Members, and the
2   PAGA employees, as well as their heirs, executors, administrators, successors, and
3   assigns, and those terms shall have res judicata and other preclusive effect in all
4   pending and future claims, lawsuits, or other proceedings maintained by or on behalf
5   of any such persons, to the extent those claims, lawsuits or other proceedings fall
6   within the scope of Released Claims as set forth in the Settlement Agreement.

7         I.     Other Findings

8   Neither this Final Approval Order; the Settlement Agreement, nor any
9   document referred to herein, nor any action taken to carry out the Settlement
10  Agreement is, may be construed as, or may be used as an admission by or against
11  Defendants or any of the other Released Parties of any fault, wrongdoing, or liability
12  whatsoever. Nor is this Final Approval Order a finding of the validity of any Claims
13  in the Actions or of any wrongdoing by Defendants or any of the other Released
14  Parties. The entering into or carrying out of the Settlement Agreement, and any
15  negotiations or proceedings related thereto, shall not in any event be construed as, or
16  deemed to be evidence of, an admission or concession with regard to the denials or
17  defenses by Defendants or any of the other Released Parties and shall not be offered
18  in evidence against Defendants or any of the Released Parties in any action or
19  proceeding in any court, administrative agency or other tribunal for any purpose
20  whatsoever other than to enforce the provisions of this Final Approval Order, the
21  Settlement Agreement, or any related agreement or release. Notwithstanding these
22  restrictions, any of the Released Parties may file in the Actions or in any other
23  proceeding, this Final Approval Order, the Settlement Agreement, or any other papers
24  and records on file in the Action as evidence of the Settlement and to support a defense
25  of res judicata, collateral estoppel, release, waiver, or other theory of claim preclusion,
26  issue preclusion or similar defense.

27  In the event that the Settlement does not become final and effective in
28

15

CASE NO. 3:20-CV-00371-JO-MSB
[~~PROPOSED~~] ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1  accordance with the terms of the Settlement Agreement, then this Final Approval
2  Order and all orders entered in connection herewith, including any order of
3  certification and appointment of a class representative or Class Counsel, shall be
4  rendered null and void and be vacated. Moreover, any funds tendered by Defendants
5  shall be returned and/or retained by Defendants consistent with the terms of the
6  Settlement.

### IV. Conclusion

For the reasons stated in this Order, the Final Approval Motion is GRANTED. The Attorney's Fees Motion is also GRANTED. Per the terms of the Parties' settlement agreement, the case shall be dismissed with prejudice; provided, however, that the Court shall retain jurisdiction with respect to any issues that arise as to the interpretation, implementation, and enforcement of the terms of Settlement and related matters.

IT IS SO ORDERED.

Dated: March 30, 2023

_____
Hon. Jinsook Ohta
United States District Judge